Argued and submitted April 13, at University of Oregon, Eugene, vacated and remanded September 9, 2009

### STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

### STACY QUINN RADTKE,
*Defendant-Appellant.*

Marion County Circuit Court
06C49184; A136543

217 P3d 220

Ryan O'Connor, Deputy Public Defender, argued the cause for appellant. On the brief were Peter Gartlan, Chief Defender, and Travis Eiva, Deputy Public Defender, Legal Services Division, Office of Public Defense Services.

Samuel A. Kubernick, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

Landau, P. J., concurring.

## SCHUMAN, J.

Defendant was convicted of unlawful possession of methamphetamine. ORS 475.894. On appeal, she assigns error to the trial court's denial of her motion to suppress evidence that, she argues, derived from an unlawful stop in violation of her rights under Article I, section 9, of the Oregon Constitution.[1] The state, in response, argues that defendant's encounter with the officer did not become a stop, and therefore a seizure for purposes of triggering constitutional protection, until after the officer had developed reasonable suspicion that defendant possessed a controlled substance, at which point the stop was, for that reason, lawful. We vacate the judgment and remand.

The undisputed facts are as follows. Marion County Sheriff's Deputy Hickam was on a drug saturation patrol in Salem when he saw a man riding a bicycle toward a restaurant. Hickam recognized the man and approached him in the restaurant parking lot. The man told Hickam that he had come to the restaurant to meet a "lady friend" named Stacy. The man consented to a search. Hickam found methamphetamine in the man's backpack, whereupon he arrested him and put him in the back seat of the patrol car.

Hickam was standing at the open back door of the patrol car and talking to the man when defendant rode her bicycle into the parking lot and approached the entrance to the restaurant, approximately 20 feet from the patrol car. Hickam recognized her as "Stacy," the person whom the arrested man intended to meet. Hickam asked her, "Hey, can I talk to you for a second?" and motioned with his hand for her to "come over to talk." He used a normal tone of voice and did not physically interfere with defendant or impede her movement. Defendant stopped her bicycle and "kind of stood with her bicycle in her hands and looked back towards [Hickam] and said, 'What's going on?'" She then "kind of walked her bike to the front of [the] patrol vehicle." Hickam walked up to meet defendant.

---

[1] Article I, section 9, of the Oregon Constitution provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

Based on defendant's bloodshot, glassy eyes and dilated pupils, Hickam believed that she was under the influence of a stimulant. He did not, however, believe the influence of the stimulant was sufficient to justify a further investigation, nor did he believe that she had committed any other crime. Nonetheless, he asked defendant if "she had an ID on her that [he] could take a look at." Defendant told him her name and date of birth, which Hickam wrote down. He then asked defendant if she had "any drugs, weapons, [or] anything illegal on her." When defendant said that she did not, Hickam asked if he "could check her person and pockets for any drugs." Defendant replied, "I don't want you touching me, but I will show you." She began to show Hickam the contents of her pockets. In the process, she attempted to extract and conceal a plastic baggie containing a white substance. Hickam saw it and believed that it was methamphetamine. He then took defendant's wrist, and the baggie fell from her hand. Hickam arrested defendant. The substance was later determined to be methamphetamine.

Defendant filed a motion to suppress the evidence, contending that Hickam, by his own testimony, did not have reasonable suspicion of criminal activity until he saw the baggie and that his interaction with her before that time amounted to a stop. The court denied her motion, and she was subsequently tried on stipulated facts and convicted of possession of methamphetamine.

■ On appeal, ORS 138.040(1)(a), defendant assigns error to the trial court's denial of her motion to suppress, renewing the argument that she made to the trial court. The state, in response, argues that Hickam's actions were not sufficient to transform a "mere conversation" into a stop until he grabbed her hand after seeing the baggie. We review the trial court's denial of defendant's pretrial motion to suppress for errors of law, accepting as true all express or implied findings of fact for which constitutionally sufficient evidence exists. *State v. Hall*, 339 Or 7, 10, 115 P3d 908 (2005). For the reasons that follow, we agree with defendant that Hickam unlawfully stopped her.

■ Not every encounter between law enforcement officers and citizens constitutes a "seizure" of the citizen under

Article I, section 9. In *Hall*, 339 Or at 16-17, the Supreme Court described three general categories of encounters between police officers and citizens:

"The first category, 'mere conversation' encounters, encompasses consensual interactions between police officers and citizens that require no justification and that do not implicate Article I, section 9. The second category, temporary restraints of a person's liberty for investigatory purposes— or 'stop[s]' under ORS 131.615(1) (1995)—constitutes a type of 'seizure' of a person under Article I, section 9, that must be justified by a reasonable suspicion of criminal activity. The third category, arrests, also constitutes a 'seizure' of a person under Article I, section 9, and must be justified by probable cause to believe that the person arrested has committed a crime."

(Citations omitted; brackets in *Hall*; citing *State v. Holmes*, 311 Or 400, 407, 813 P2d 28 (1991).) The determination that a person has been seized "require[s] a fact-specific inquiry into the totality of the circumstances of the particular case." *Holmes*, 311 Or at 408. In *Holmes, id.* at 409-10, the Supreme Court held that a person is stopped

"(a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) whenever an individual believes that (a), above, has occurred and such belief is objectively reasonable in the circumstances."

Here, Hickam testified that he did not develop reasonable suspicion of criminal activity until he saw the baggie when defendant was emptying her pockets. The issue is therefore whether, before that time, defendant believed that she was not free to simply walk away from the encounter and, if so, whether, under the circumstances, "a reasonable person in defendant's position could have believed" that. *State v. Toevs*, 327 Or 525, 536, 964 P2d 1007 (1998).

The circumstances here do not differ meaningfully from those in *State v. Ashbaugh*, 225 Or App 16, 200 P3d 149 (2008), *rev allowed*, 346 Or 257 (2009). In that case, a police officer asked the defendant, without reasonable suspicion, if she had anything illegal in her purse, and she said no. The

officer then asked if he could look inside her purse, and the defendant consented. The officer looked inside her purse and found methamphetamine. The conversation between the defendant and the officer was relaxed and nonconfrontational. *Id.* at 18-19. We concluded that "a person who knows that he or she is being investigated by a police officer during an encounter could reasonably believe that, for that reason, his or her freedom of movement has been restrained." *Id.* at 28.

In the present case, when defendant arrived at the parking lot, she observed her friend being detained in the back of the police car. Hickam, a uniformed and armed police officer, then motioned for defendant to come over. That act in and of itself did not constitute a stop. *See Hall*, 339 Or at 19. However, he then inquired about identification and wrote down her name and date of birth, from which she could reasonably conclude that he intended to pursue further investigation of her. Under the circumstances, that act might have amounted to a stop. *See State v. Parker*, 227 Or App 231, 238, 205 P3d 65 (2009) (where one officer requested the defendant's identifying information while another officer was using the computer, a reasonable person could conclude that he or she was the subject of a records check). We need not decide whether it did, however, because Hickam then asked if defendant had "any drugs, weapons, [or] anything illegal on her," and, when she said no, he asked for permission to search her. Although defendant's conversation with Hickam was in a normal tone of voice, it was a conversation between a citizen and an armed, uniformed police officer, who had detained her friend in the back of the marked patrol car and who had requested and had written down defendant's identifying information. As in *Ashbaugh*, the request to search occurred after defendant denied possessing contraband or weapons. Under those circumstances, a reasonable person could believe that the officer did not accept her denial, wanted to conduct a further investigation, and would not permit her simply to walk away.

From the current record, we are unable to determine whether defendant believed that she was free to leave, although the fact that she did not leave even though she

knew she had methamphetamine in her pocket suggests as much. We therefore remand to the trial court for that determination. If the trial court finds that defendant believed that she was free to leave, the court should reinstate defendant's conviction. If the court determines that defendant believed that she was not free to leave, however, the evidence found on defendant must be suppressed.

Vacated and remanded.

**LANDAU, P. J.,** concurring.

I agree with the majority that this case is indistinguishable from *State v. Ashbaugh*, 225 Or App 16, 200 P3d 149 (2008), *rev allowed*, 346 Or 257 (2009), and that, in consequence, the case must be remanded for findings about whether defendant, in fact, subjectively believed that she was free to leave the scene. I write separately for two reasons.

First, as I stated in my concurring opinion in *Ashbaugh*, if it is necessary to remand for findings on whether defendant felt free to leave, it is not necessary for us to opine whether, if she did, such a subjective belief was objectively reasonable. It is the state's burden to demonstrate such a belief, and, if the state cannot meet that burden, then the matter is at an end, rendering any opinion about the reasonableness of such a belief merely advisory.

Second, apart from that, I have come to have reservations about whether *Ashbaugh* was correctly decided. It strikes me that the decision cannot easily be harmonized with the Supreme Court's decision in *State v. Holmes*, 311 Or 400, 410, 813 P2d 28 (1991), in which the court stated that "law enforcement officers remain free to approach persons on the street or in public places, seek their cooperation or assistance, *request or impart information*, or question them without being called upon to articulate a certain level of suspicion in justification." (Emphasis added.) As I understand it, under our decision in *Ashbaugh* and in subsequent decisions, we have concluded that, while it may be permissible for law enforcement officers to ask a person for identification, it is not permissible for those officers to do anything with that

very information without reasonable suspicion that the person giving it has engaged in criminal activity. That makes little sense to me.

I also have come to question whether remanding for findings as to a defendant's subjective understanding in this and similar cases can be reconciled with basic principles of preservation of error. In this case, for example, defendant did not argue to the trial court or to us that it is error to determine whether she was stopped without first finding whether she subjectively believed that she could not leave and, if she did, that such a believe was objectively reasonable. She did not ask us for a remand for such a finding. But we are granting that relief nevertheless. I imagine trial courts will be more than a little frustrated to find us remanding for findings that defendants never requested from them in the first place.

In fairness to the majority, granting that relief is what *Ashbaugh* requires. And, in fairness to the majority in *Ashbaugh*, the tensions that I have described are due in no small part to what appears to be some inconsistency in *Holmes* itself. Perhaps the Supreme Court will sort that out when it reviews *Ashbaugh*. In the meantime, *Ashbaugh* is controlling. I therefore concur in the result.