Argued and submitted April 29, 2009, vacated and remanded March 10, 2010

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## FRANK JOSEPH ZACCONE,
aka Frank Joseph Zaccone, Jr.,
*Defendant-Appellant.*

Multnomah County Circuit Court
060935633; A136329

227 P3d 215

Laura A. Frikert, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Susan G. Howe, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Rolf C. Moan, Acting Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendant appeals a judgment of conviction for 10 counts of identity theft. In his first assignment of error, defendant challenges the trial court's denial of his motion to suppress evidence obtained during a search that occurred after the car in which he was a passenger was stopped for a traffic violation. In his second assignment, defendant asserts that the trial court erred in failing to merge his convictions. As explained below, we vacate and remand with respect to defendant's first assignment of error. We reject defendant's second assignment of error without discussion.

■ We review the lawfulness of searches and seizures for errors of law, although we are bound by the trial court's findings of historical fact to the extent that those findings are supported by evidence in the record. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

The following facts are taken from the trial court's findings and the record of the suppression hearing. Defendant was a passenger in a car that was stopped for a traffic violation. Officer Rilling, who conducted the traffic stop, asked the driver, defendant, and another passenger for their identification. The front-seat passenger provided Rilling with her identification. Defendant, who was seated in the back seat, told Rilling that he did not have any identification, because he was just going to the store to buy cigarettes and did not think that he needed it. Rilling then asked defendant if he "minded giving [her] his name." Although barely audible, defendant gave a name that sounded to Rilling like "Andy." When Rilling then asked, "Andy, what is your last name," defendant corrected her, saying, "It's Anthony," and reported that his last name was "[u]h, Brady." At some point, Rilling also asked defendant for his date of birth; she testified that he had a hard time recalling his birthday. Because of his demeanor and hesitancy in providing the information, Rilling believed that defendant was probably giving her a false name. The entire encounter with the car's occupants, up to that point, lasted "[m]aybe a minute."

Rilling then returned to her patrol car to run warrant checks on the car's occupants. She did not tell them that that was what she was doing, nor were they able to see or

hear her conducting the check. The warrant check revealed that the driver had a suspended license; consequently, Rilling decided to impound the car. No records matched the name that defendant had given her, which Rilling testified, "usually means * * * either they've given me a wrong name, I've typed it down—I've put it in the computer wrong, I've copied [it] down into my notebook wrong."[1]

Rilling radioed for a cover officer and Officer Reynaga responded. Rilling told Reynaga that she was about to tow the car because the driver had a suspended license; she also told him that she believed defendant had given her a false name. When Reynaga walked up to the car, he could see that defendant was trying to hide something with his feet. He asked defendant to step out of the car, because the car was being towed. After defendant got out of the car, Reynaga saw that defendant had been trying to hide a wallet underneath the front seat. Reynaga asked defendant if the wallet contained defendant's identification and if Reynaga could get it and look at it. Defendant agreed and told Reynaga that he had initially given Rilling a false name because he thought that he had an outstanding warrant for his arrest.

Rilling then ran a warrant check using defendant's correct identification. The check revealed that there were no outstanding warrants for defendant's arrest but that he was on probation for identity theft. Rilling approached defendant, told him that she knew that he was on probation, and asked him why he thought that he had an outstanding warrant. He replied that it was because he had failed to check in with his probation officer. Rilling informed defendant that he did not have any outstanding warrants, but asked him to "please stand at the front of Officer Reynaga's patrol vehicle." She also directed the driver and the front seat passenger to step out of the car and stand by Reynaga's car. She testified that she did that so that she could safely inventory the car before towing it. Rilling testified that defendant and the other passenger were free to leave at that point and that she would have told them as much "if they would've asked, but they didn't ask." She also indicated, however, that if they had just

---

[1] The record does not disclose whether Rilling wrote down defendant's name and date of birth in *this* case, much less whether she did so in defendant's presence.

walked away without asking, she "may have questioned why they were walking away."

During the inventory of the car, Rilling found a backpack and a fanny pack on the back seat of it. The driver indicated that the items belonged to defendant. After asking him twice, Rilling obtained defendant's consent to search the backpack. In it, she found a wooden box containing burglary tools and a blue paper folder containing personal information belonging to different people. She then requested and obtained defendant's consent to search the fanny pack. She discovered a wallet, which contained an identification card for an "Anthony Brady," the name that defendant had initially given her. There was also a day planner, which had more addresses, names, Social Security numbers, and account numbers written in it. Rilling also found a glass methamphetamine pipe and a baggie containing a small amount of methamphetamine inside a red bandana. At that point, she took defendant into custody.

Defendant was charged with 12 counts of identity theft and one count each of possession of methamphetamine, possession of a burglary tool, and giving false information to a police officer. He moved to suppress all of the evidence obtained during the stop on the ground that he had been illegally seized under Article I, section 9, of the Oregon Constitution[2] and his consent to search the backpack and fanny pack derived from the officers' exploitation of that illegality. He argued that the illegal seizure of his person occurred at any of three points during the encounter: (1) when Rilling asked for his name and date of birth to run a warrant check; (2) when he was asked to step out of the car; and (3) when, after being informed that he did not have any outstanding warrants, he was told to go stand by Reynaga's patrol car.

The trial court denied defendant's motion, concluding that, although the officers did not have reasonable suspicion of criminal activity,[3] defendant was not unlawfully

---

[2] Article I, section 9, provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

[3] The trial court rejected the state's argument that the officers had reasonable suspicion that defendant had violated ORS 807.620 by giving Rilling false

stopped because, under the totality of the circumstances, "I don't think objectively you could say that a reasonable person wouldn't feel free to leave." The trial court also found that defendant had voluntarily consented to the search. Defendant was subsequently convicted, based on a conditional no contest plea, of 10 counts of identity theft. The remaining counts were dismissed.

On appeal, defendant assigns error to the denial of his suppression motion, largely renewing his arguments below. Citing *State v. Rider*, 216 Or App 308, 172 P3d 274 (2007), *rev dismissed*, 345 Or 595 (2008), defendant asserts that he was unlawfully seized when Rilling requested his full name and date of birth and took that information back to her patrol car without reasonable suspicion of criminal activity by defendant. Under those circumstances, according to defendant, it is reasonable for a person to believe that he is under investigation by the officer. Alternatively, defendant argues that he was seized when Reynaga asked him to step out of the car. Finally, defendant contends that he remained illegally seized at the time that Rilling asked for and obtained his consent because "she continued to exercise control over defendant's movement (directing him where to stand while she conducted her inventory search)" after having just previously confronted him with her knowledge of his probationary status and his misrepresentation about his identity.

The state responds that this case is materially distinguishable from *Rider* because, unlike in *Rider*, the officer did not initiate the warrant check in defendant's presence and, here, defendant was informed that he did not have any outstanding warrants. The latter is significant, in the state's view, because, by the time that defendant became *aware* that he had been subjected to an investigatory check, he knew that he was *no longer* the subject of an investigation. The state also argues that neither the circumstance of asking defendant to get out of the car, nor requesting that he wait by the patrol car, rises to the level of an unlawful stop. Finally, according to the state, even if defendant was unlawfully

information, reasoning that that statute does not apply to passengers. The state does not renew that argument on appeal.

seized, the taint of that unlawful seizure ended when Rilling informed defendant that he did not have any outstanding warrants—that is, *before* Rilling requested defendant's consent to search the backpack and fanny pack—and thus, defendant's consent was not, in any event, the product of unlawful police conduct.

We first note that we need not resolve whether defendant's encounter with Rilling and Reynaga was an unlawful seizure from the outset—that is, when defendant was asked for his name and date of birth. Rather, because defendant seeks to suppress the evidence discovered in the search of his backpack and fanny pack, the relevant inquiry is whether he was seized for purposes of Article I, section 9, at the time that Rilling asked him for consent to conduct the search.

The determination of whether a person has been seized under Article I, section 9, and at what point in the encounter, requires a fact-specific inquiry into the totality of the circumstances of the particular case. *State v. Hall*, 339 Or 7, 18, 115 P3d 908 (2005). A seizure occurs "(a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) whenever an individual believes that (a), above, has occurred and such belief is objectively reasonable in the circumstances." *State v. Holmes*, 311 Or 400, 409-10, 813 P2d 28 (1991). A *"Holmes* type (b)" stop occurs "whenever a person *subjectively* believes that a law enforcement officer significantly has restricted or interfered with that person's liberty or freedom of movement *and* such a belief is *objectively reasonable* under the circumstances." *State v. Toevs*, 327 Or 525, 535, 964 P2d 1007 (1998) (emphasis in original). Thus, as we explained in *State v. Lantzsch*, 229 Or App 505, 515, 214 P3d 22 (2009), the state can prevail against a *Holmes* type (b) motion to suppress by proving either "(1) that the defendant did not believe that the officer had significantly restrained or interfered with the defendant's freedom of movement, or (2) that such a belief would not be objectively reasonable."

We begin with the objective component. A belief is "objectively reasonable" if a "reasonable person in [the]

defendant's position could have believed that the officers significantly had restricted his [or her] liberty or freedom of movement." *Toevs*, 327 Or at 536; *accord State v. Parker*, 227 Or App 231, 236, 205 P3d 65 (2009); *State v. Ashbaugh*, 225 Or App 16, 25, 200 P3d 149 (2008), *rev allowed*, 346 Or 257 (2009).

Applying that principle to the present case and considering the totality of the circumstances, we conclude that a reasonable person in defendant's position could have believed that his freedom of movement was significantly restricted when he was asked to go stand in front of Reynaga's patrol car and then asked for consent to search. First, at that point, defendant was aware that the officers had been investigating him. Moreover, Rilling had just confronted defendant with the fact that she knew from that investigation that he was on probation and that he had lied about his identity. Although he was told that there were no outstanding warrants for his arrest, he was not told that he was free to leave but, instead, was directed to go stand in a particular place. Under those circumstances, a reasonable person could believe that he or she was still being investigated and, therefore, was not free to ignore the officer's direction and leave the scene.[4] *Cf. State v. Bretches*, 225 Or App 602, 609, 202 P3d 883, *rev den*, 346 Or 361 (2009) (stop ended when defendant was told he was free to go and ordinary conversation ensued).

■ The trial court did not make any findings as to whether defendant *subjectively* believed that to be the case. Thus, we must remand for further factfinding. *State v. Backstrand*, 231 Or App 621, 626 n 1, 220 P3d 748 (2009). On remand, if the trial court determines that defendant subjectively believed that he was not free to leave when he was asked for consent to search, then the evidence at issue must

_____

[4] On that point, the state disagrees, arguing that any alleged seizure of defendant ended when he was told that the warrant check was clear—before he was asked for consent to search—and, therefore, the unlawful police conduct cannot properly be viewed as the source of the disputed evidence. As we have explained, we reject the state's premise that the alleged seizure ended when defendant was informed about the results of the warrant check.

be suppressed. If the court finds to the contrary on remand, then it should reinstate the judgment.

Vacated and remanded.