Submitted on remand from the Oregon Supreme Court October 8, 2014,
affirmed August 12, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STACY QUINN RADTKE,
*Defendant-Appellant.*

Marion County Circuit Court
06C49184; A136543

358 P3d 1003

Peter Gartlan, Chief Defender, and Travis Elva, Deputy Public Defender, Office of Public Defense Services, filed the opening brief for appellant. On the supplemental brief were Peter Gartlan, Chief Defender and Ernest G. Lannet, Chief Deputy Defender.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Samuel A. Kubernic, Assistant Attorney General, filed the answering brief for respondent. On the supplemental brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jennifer S. Lloyd, Attorney-in-Charge.

Before Ortega, Presiding Judge, and Sercombe, Judge, and DeVore, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

This case is on remand from the Oregon Supreme Court, which vacated our prior decision, *State v. Radtke*, 242 Or App 234, 255 P3d 543 (2011) (*Radtke II*), *vac'd and rem'd*, 355 Or 879, 333 P3d 333 (2014),[1] and ordered reconsideration in light of *State v. Backstrand*, 354 Or 392, 313 P3d 1084 (2013); *State v. Highley*, 354 Or 459, 313 P3d 1068 (2013); and *State v. Anderson*, 354 Or 440, 313 P3d 1113 (2013). In *Radtke II*, we concluded that, under *State v. Hall*, 339 Or 7, 19, 115 P3d 908 (2005), and *State v. Ashbaugh*, 349 Or 297, 244 P3d 360 (2010), the trial court erred in denying defendant's motion to suppress evidence, because, under the totality of the circumstances, including the immediate subsequent questioning, defendant was seized when the police officer asked for, received, and wrote down her name and date of birth. 242 Or App at 238-39. After our decision, the Supreme Court issued *Backstrand*, *Highley*, and *Anderson*, which held that an officer's mere request for identification does not transform an otherwise lawful officer-citizen encounter into an unlawful seizure. We are now called upon to examine whether, under those cases, defendant's encounter with law enforcement amounted to an illegal stop under Article I, section 9, of the Oregon Constitution. Because we conclude that, under the totality of the circumstances, defendant was not unlawfully seized, we affirm.

This is a criminal appeal in which defendant challenges her conviction for possession of methamphetamine, ORS 475.894. We twice reversed the trial court's order denying defendant's motion to suppress. As related *Radtke I*, the facts are as follows:

> "Marion County Sheriff's Deputy Hickam was on a drug saturation patrol in Salem when he saw a man riding a bicycle toward a restaurant. Hickam recognized the man and approached him in the restaurant parking lot. The man told Hickam that he had come to the restaurant to meet a 'lady friend' named Stacy. The man consented to a search. Hickam found methamphetamine in the man's

---

[1] *Radtke II* was a remand from the Supreme Court to reconsider our decision in *State v. Radtke*, 230 Or App 686, 217 P3d 220 (2009) (*Radtke I*), *vac'd and rem'd*, 349 Or 663, 249 P3d 1281 (2011), in light of *State v. Ashbaugh*, 349 Or 297, 244 P3d 360 (2010).

backpack, whereupon he arrested him and put him in the back seat of the patrol car.

"Hickam was standing at the open back door of the patrol car and talking to the man when defendant rode her bicycle into the parking lot and approached the entrance to the restaurant, approximately 20 feet from the patrol car. Hickam recognized her as 'Stacy,' the person whom the arrested man intended to meet. Hickam asked her, 'Hey, can I talk to you for a second?' and motioned with his hand for her to 'come over to talk.' He used a normal tone of voice and did not physically interfere with defendant or impede her movement. Defendant stopped her bicycle and 'kind of stood with her bicycle in her hands and looked back towards [Hickam] and said, "What's going on?"' She then 'kind of walked her bike to the front of [the] patrol vehicle.' Hickam walked up to meet defendant.

"Based on defendant's bloodshot, glassy eyes and dilated pupils, Hickam believed that she was under the influence of a stimulant. He did not, however, believe the influence of the stimulant was sufficient to justify a further investigation, nor did he believe that she had committed any other crime. Nonetheless, he asked defendant if 'she had an ID on her that [he] could take a look at.' Defendant told him her name and date of birth, which Hickam wrote down. He then asked defendant if she had 'any drugs, weapons, [or] anything illegal on her.' When defendant said that she did not, Hickam asked if he 'could check her person and pockets for any drugs.' Defendant replied, 'I don't want you touching me, but I will show you.' She began to show Hickam the contents of her pockets. In the process, she attempted to extract and conceal a plastic baggie containing a white substance. Hickam saw it and believed that it was methamphetamine. He then took defendant's wrist, and the baggie fell from her hand. Hickam arrested defendant. The substance was later determined to be methamphetamine."

*Radtke I*, 230 Or App at 688-89.

In *Radtke II*, we reexamined our decision in *Radtke I* in light of *Ashbaugh*, and, relying on *Hall*, concluded that "taking a person's identification for the purpose of checking on the person's status is one way in which a police officer can show authority that, in combination with other circumstances, can convey to the person whose identification has been obtained that he or she is not free to leave." *Radtke II*,

242 Or App at 239-40. We determined that, under the totality of the circumstances, including the immediate subsequent questioning, a reasonable person would believe that her liberty or freedom of movement had been significantly restricted when Hickam took note of defendant's name and date of birth, and therefore, defendant was seized. *Id.* at 240.

In *Backstrand, Highley,* and *Anderson,* the Supreme Court addressed whether an officer's request for identification was an unlawful seizure under Article I, section 9, and, in all three cases, the court held that the defendants had not been illegally seized based on the totality of the circumstance. In doing so, the court concluded that we had misunderstood the holding in *Hall,* which, as noted, we similarly relied upon in *Radtke II,* to conclude that defendant was unlawfully seized. *See Highley,* 354 Or at 472 (*"Hall* should not be understood, as it appears to have been understood * * * by the Court of Appeals, to stand for the proposition that an officer's request for identification and a check of that identification, either to determine its validity or the status of the person who tenders it, is a *per se* stop.").

Therefore, our inquiry on remand is whether the officer's act of taking defendant's information, combined with the immediately subsequent questioning, was an unlawful seizure. Article I, section 9, protects individuals from unreasonable searches and seizures.[2] In *Backstrand,* the Supreme Court explained:

> "What distinguishes a seizure (either a stop or an arrest) from a constitutionally insignificant police-citizen encounter is the imposition, either by physical force or through some show of authority, of some restraint on the individual's liberty. The test is an objective one: Would a reasonable person believe that a law enforcement officer intentionally and significantly restricted, interfered with, or otherwise deprived the individual of his or her liberty or freedom of movement. Because of the diversity of potential police-citizen encounters, the inquiry necessarily is fact-specific and requires an examination of the totality of the circumstances involved."

---

[2] Article I, section 9, provides, in pertinent part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

354 Or at 399 (internal quotation marks omitted). For a "show of authority" to give rise to a seizure, the circumstances must be such that a reasonable person would believe "that an officer is exercising his or her official authority to restrain." *Id.* at 401. "Explicitly or implicitly, an officer must convey to the person with whom he is dealing, either by word, action, or both, that the person is not free to terminate the encounter or otherwise go about his or her ordinary affairs." *Id.*

Further, the court explained that law enforcement officers may "approach persons on the street or in public places, seek their cooperation or assistance, request or impart information, or question them[.]" *Id.* at 400. In general, "[a] mere request for identification made by an officer in the course of an otherwise lawful police-citizen encounter does not, in and of itself, result in a seizure." *Id.* at 410. In *Highley*, the court held that, under the totality of the circumstances, the defendant was not seized by the officer's actions when the officer requested identification and requested consent to perform a search of the defendant. 354 Or at 468-71. It concluded that "[v]erbal police inquiries are not, by themselves, seizures." *Id.* at 468. Instead, "something more than just asking a question, requesting information, or seeking an individual's cooperation is required[.]" *Backstrand*, 354 Or at 403.

Thus, the question in this case is whether, based on the totality of the circumstances, a reasonable person would believe that Hickam engaged in a "show of authority" or "[e]xplicitly or implicitly" conveyed to defendant that she was not "free to terminate the encounter or otherwise go about [her] *** ordinary affairs." *Id.* at 401. In examining whether law enforcement officers engaged in a show of authority, we examine the nature of the officer's questions, behavior, and actions, the tone of the encounter, and other attendant circumstances. *Anderson*, 354 Or at 453. "[M]ere requests for cooperation [are] not seizures unless [the] officer, through demeanor, tone, language, or totality of circumstances, conveyed a restraint on liberty." *Backstrand*, 354 Or at 403-04 (citing *State v. Ehly*, 317 Or 66, 76-77, 854 P2d 421 (1993)). Further, a "show of authority" does not exist simply because police officers convey their official status through

uniforms, badges, or marked cars, or because an individual "feels obliged to cooperate with the officer simply because of the officer's status." *Backstrand*, 354 Or at 401-02.

Similar to a mere request for identification, "a police inquiry such as a request for consent [to search] is not by itself a show of authority; for a police inquiry to trigger the protections of Article I, section 9, the inquiry must be combined with 'physical restraint' or some other show of police authority of the sort that restrains personal freedom." *State v. Salvador*, 237 Or App 424, 432, 241 P3d 324 (2010). Accordingly, we must determine if Hickam's request for identification, combined with his questions about drugs and his request for consent to search, in the totality of the circumstances here, occurred in the context of a "show of authority" that constitutes an unlawful seizure.

In *State v. Wabinga*, 265 Or App 82, 89, 333 P3d 1213 (2014), state troopers approached the defendant, questioned him in a "nonconfrontational" manner about general topics as well as what he was doing in the area, why he was nervous, whether he was on parole, and whether he possessed any weapons, all after the defendant indicated that he did not need police assistance. The troopers then requested consent to conduct a patdown and, after receiving consent, conducted the patdown. *Id.* at 85. We determined that, in the totality of the circumstances,

> "based on the nonconfrontational nature of the encounter—including the troopers' questioning and requests for consent to search, defendant's consent to those searches, and his compliance with the troopers' requests—when viewing the circumstances in concert with one another, the troopers' actions * * * did not create a whole greater than the sum of its parts and thus could not reasonably be construed as threatening or coercive."

*Id.* at 90-91 (citing *State v. Charles*, 263 Or App 578, 585, 331 P3d 1012 (2014) (analyzing "whether all of the officer's actions combine to form a whole greater than the sum of its parts; that is, whether, based on the totality of the circumstances, a reasonable person would believe that the officer had *intentionally and significantly* deprived defendant of his freedom of movement" (emphasis added))). We concluded,

under those circumstances that, the defendant was not unlawfully seized.

Here, Hickam "used a normal tone of voice and did not physically interfere with defendant or impede her movement." *Radtke I*, 230 Or App at 688. He requested defendant's identification, asked if she had drugs, weapons, or anything illegal on her, and sought consent to perform a patdown search. Defendant refused the search, but voluntarily showed Hickam the contents of her pockets. Because Hickam's behavior was "nonconfrontational," and his questioning of defendant was far less extensive and intrusive than the officers' questioning in *Wabinga*, we cannot conclude that Hickam's conduct constituted a "show of authority" that would amount to an unlawful seizure of defendant under the *Backstrand* line of cases. Therefore, we conclude that the trial court did not err in denying defendant's motion to suppress.

Affirmed.