Argued and submitted April 13, 2015, affirmed June 29, petition for review allowed December 22, 2016 (360 Or 751)
See later issue Oregon Reports

In the Matter of K. A. M.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

K. A. M.,
*Appellant.*

Jackson County Circuit Court
070424J;
Petition Number 070424JB;
A154130

379 P3d 686

Christa Obold-Eshleman argued the cause and filed the brief for appellant.

Peenesh H. Shah, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.*

---

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

## ARMSTRONG, P. J.

Youth appeals a juvenile court delinquency judgment in which he entered a conditional guilty plea to conduct that, if committed by an adult, would constitute unlawful possession of methamphetamine, ORS 475.894, assigning error to the juvenile court's denial of his suppression motion. An officer was conducting a sweep of a house when he encountered youth in a bedroom. The officer asked youth his name and if he had anything illegal in his possession. Youth gave the officer his name and admitted that he had something illegal on him, eventually handing the officer a pipe that contained methamphetamine residue. Youth moved to suppress the drug evidence on the ground that the officer had violated Article I, section 9, of the Oregon Constitution by unlawfully stopping youth by asking him if he had anything illegal in his possession. The juvenile court denied the motion. We agree with the juvenile court's ruling on youth's suppression motion and affirm.

Youth, who was 17 years old and homeless, was in a house when the person renting the house gave the police permission to walk through the house to look for a person of interest. Five police officers began searching the house, and, as part of that process, a plainclothes officer entered the bedroom in which youth was located. The officer asked youth his name and whether he had anything illegal in his possession. Youth gave the officer his name and replied that he had a pipe. The officer asked him what type of pipe he had, and youth responded that it was a "meth pipe." Youth gave the officer the pipe, which contained methamphetamine residue. The state subsequently filed a delinquency petition, alleging that the juvenile court had jurisdiction over youth on the ground that youth had unlawfully possessed methamphetamine, in violation of ORS 475.894.[1]

Youth filed a pretrial motion under Article I, section 9, to suppress the pipe and his statements.[2] Youth argued that

---

[1] ORS 475.894(1) provides that "[i]t is unlawful for any person knowingly or intentionally to possess methamphetamine."

[2] Article I, section 9, provides that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure."

the officer had stopped him by asking him whether he had anything illegal in his possession, and, because the officer did not have reasonable suspicion that youth was involved in criminal activity when he stopped youth, the stop was unlawful. The state responded that the officer's interaction with youth was not a stop because the officer had engaged only in conversation with youth. The juvenile court agreed with the state and denied the motion. Youth then entered a conditional guilty plea, reserving the right to appeal the denial of his suppression motion. The juvenile court entered a delinquency judgment, which youth appeals.

Youth contends that the court erred in concluding that the officer had not stopped youth. A person is stopped for purposes of Article I, section 9, if "(a) a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) if a reasonable person under the totality of the circumstances *would* believe that (a) above has occurred." *State v. Ashbaugh*, 349 Or 297, 316, 244 P3d 360 (2010) (emphasis in original). The determination whether an officer has stopped a person focuses on the officer's actions and whether they constituted a show of authority. *See State v. Parker*, 266 Or App 230, 234-35, 337 P3d 936 (2014). A show of authority occurs when an officer "explicitly or implicitly * * * convey[s] to the person with whom he [or she] is dealing, either by word, action, or both, that the person is not free to terminate the encounter or otherwise go about his or her ordinary affairs." *State v. Backstrand*, 354 Or 392, 401, 313 P3d 1084 (2013). Whether the officer's actions communicated to the person that the person was not free to terminate the encounter is determined under an objective standard—*viz.*, whether a reasonable person would feel free to terminate the encounter. *Ashbaugh*, 349 Or at 316. The inquiry is necessarily fact specific and requires an examination of the totality of the circumstances of the interaction. *Backstrand*, 354 Or at 399.

Youth contends that his status as a 17-year-old homeless youth at the time of his encounter with the officer bears on whether the officer's conduct toward him constituted a show of authority. Youth does not cite, and we are unaware of, any case that stands for the proposition that—when

determining whether a person was stopped under Article I, section 9—the person's personal characteristics bear on the analysis.[3] In fact, the contrary is true. In determining whether an officer has stopped a person, the inquiry focuses on the officer's actions and how a reasonable person would have perceived them. We therefore reject youth's contention that the relevant inquiry is whether a youth with his characteristics—17 years old and homeless—would have felt free to terminate the encounter.

We further conclude that youth was not stopped. Absent some other show of authority, a person is not seized when an officer asks to see a person's identification and asks whether the person has anything illegal in his or her possession. For example, in *State v. Radtke*, 272 Or App 702, 358 P3d 1003 (2015), the defendant was riding her bicycle in a parking lot when an officer asked her to come over to speak with him. The officer made the request using a normal tone of voice and did not physically interfere with the defendant or impede her movement. The defendant stopped her bicycle, and the officer asked her for identification and if she had "any drugs, weapons or anything illegal" on her. *Id.* at 705. The defendant denied having anything illegal. The officer then asked the defendant for consent to search her person and pockets for drugs. The defendant refused but offered to show the officer the contents of her pockets. In the process of doing that, the defendant inadvertently showed the officer a baggie of methamphetamine, which the officer seized.

The state subsequently charged the defendant with unlawful possession of methamphetamine, and the defendant moved to suppress the drug evidence on the ground that the officer had unlawfully stopped her. The trial court denied the motion, and the defendant was convicted. We concluded in the ensuing appeal that the trial court had

---

[3] Youth relies on *State v. D. P.*, 259 Or App 252, 261, 313 P3d 306 (2013), to support the proposition that we should take his age into consideration in determining whether a reasonable person would have believed that the person was free to terminate the encounter. However, he acknowledges that the issue in that case was whether the youth was in compelling circumstances for purposes of the analysis that applies to Article I, section 12, of the Oregon Constitution, and youth does not explain why we should import that standard into our search-and-seizure jurisprudence.

correctly denied the suppression motion because the officer's behavior—asking the defendant for identification, asking her whether she had anything illegal on her person, and then asking to search her person and pockets—did not constitute a show of authority. *Id.* at 709.

Here, the officer's actions were even less likely than those in *Radtke* to communicate to a reasonable person that the person was not free to terminate the encounter. The officer asked youth to identify himself and whether he had anything illegal on his person. The officer in *Radtke* did more than that—asking the defendant to approach him and asking her for consent to search—yet we held that the officer's actions did not constitute a stop. Hence, *Radtke* supports the conclusion that youth was not stopped.

Youth attempts to distinguish this case from *Radtke* on the ground that the encounter in *Radtke* occurred in a public area, while the encounter in our case occurred in a private home. Youth relies on *State v. Fair*, 353 Or 588, 302 P3d 417 (2013), as support for that distinction. We acknowledge that the location of an encounter with the police can affect how a reasonable person would view the encounter. However, that principle does not affect our analysis in this case because, unlike in *Fair*, the officer here did not engage in any action that might convey to a reasonable person that the person was not free to terminate the encounter.

In sum, the officer did not stop youth when, after receiving consent from the person renting the house to conduct a sweep of the house, the officer asked youth his name and whether he had anything illegal in his possession. Because the officer's actions were lawful, it follows that youth's statements and his relinquishment of the meth pipe were not the product of unlawful police conduct. Hence, the juvenile court correctly denied youth's suppression motion.

Affirmed.