Submitted on remand from the Oregon Supreme Court March 22, reversed and remanded August 3, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KEVIN ANTHONY WRIGHT,
*Defendant-Appellant.*

Marion County Circuit Court
07C51533; A138252

260 P3d 755

Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services, and Irene B. Taylor, Deputy Public Defender, for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Anna M. Joyce, Assistant Attorney General, for respondent.

Before Wollheim, Presiding Judge, and Schuman, Judge, and Sercombe, Judge.

WOLLHEIM, P. J.

## WOLLHEIM, P. J.

This case is on remand from the Oregon Supreme Court, which vacated our prior decision, *State v. Wright*, 233 Or App 471, 225 P3d 149 (2010), and remanded for reconsideration in light of *State v. Ashbaugh*, 349 Or 297, 244 P3d 360 (2010). The first time this case came before us, we reversed and remanded in a per curiam decision. The issue now on remand from the Supreme Court is whether the trial court erred in denying a motion to suppress evidence because an interaction between the officer and defendant constituted a seizure under Article I, section 9, of the Oregon Constitution. We conclude that the court erred and we reverse and remand.

In reviewing a court's denial of a motion to suppress, we are bound by the trial court's express and implicit findings of fact if there is constitutionally sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We review the court's legal conclusions based on those facts for legal error. *State v. Warner*, 136 Or App 475, 478, 901 P2d 940 (1995).

One night in October 2007, police officers arrested defendant's friend in an apartment. The friend asked an officer to let defendant know he had been arrested. Defendant and his sister were sleeping in a car in the apartment complex parking lot. The officer approached defendant's car and, as reported, found defendant and his sister sleeping in the car. The officer asked who they were and asked for identification. Defendant gave the officer his Oregon ID card.

When the officer radioed defendant's name in to dispatch, he learned that defendant was a registered sex offender. The officer returned to the car and asked defendant why he was sleeping in the car; defendant responded that he was transient. The officer asked defendant if he was living in his car instead of the address where he was registered as a sex offender, and defendant replied that he was living in his car and had not registered a new address. The officer asked defendant if he knew he had to register even if he did not have a specific address, and defendant admitted that he did. The officer arrested defendant for failure to register as a sex offender.

Defendant filed a motion to suppress all the evidence seized from his person or vehicle, including the statements that he made to the officer. Defendant argued that the stop was illegal and that a reasonable person in his position would not feel free to leave because the officer had defendant's identification card. At the hearing on the motion to suppress, the officer testified that if defendant had refused to give him his identification, "I did not have any reason to make him give it to me." The officer said, "Once I found out that he was a registered sex offender * * * I became suspicious that he was living in the car and had not been living at the address that he was registered at." Defendant testified that he did not feel that he was free to leave; defendant thought the officer would arrest him if he left because he was a registered sex offender. The trial court denied defendant's motion to suppress.

After a stipulated facts trial, the court found defendant guilty of failure to register as a sex offender. On appeal, we reversed and remanded, citing *State v. Anderson*, 231 Or App 198, 217 P3d 1133 (2009), *adh'd to on recons*, 234 Or App 420, 228 P3d 638 (2010), *rev allowed*, 350 Or 130 (2011) (holding that defendant's belief that his freedom was significantly restrained when an officer asked him for identification was objectively reasonable and, therefore, asking for defendant's identification qualified as a stop). *Wright*, 233 Or App 471. The Supreme Court allowed review, vacated our decision, and remanded for reconsideration in light of *Ashbaugh*, 349 Or 297. *State v. Wright*, 349 Or 663, 249 P3d 1281 (2011).

On remand, defendant argues that a reasonable person in defendant's circumstances would believe that he was not free to leave and, consequently, defendant was seized when the officer asked defendant for his identification. The state contends that the officer did not significantly restrict defendant's liberty and, therefore, the trial court correctly denied defendant's motion to suppress. For the reasons that follow, we agree with defendant.

Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but

upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

In *Ashbaugh*, the Supreme Court abandoned the subjective component of a seizure articulated in *State v. Holmes*, 311 Or 400, 813 P2d 28 (1991), and set forth the following inquiry for determining whether a person has been seized:

> "A 'seizure' of a person occurs under Article I, section 9, of the Oregon Constitution: (a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) if a reasonable person under the totality of the circumstances *would* believe that (a) above has occurred."

349 Or at 316 (emphasis in original). Whether an encounter amounts to a seizure for purposes of Article I, section 9, of the Oregon Constitution depends on whether, under the totality of the circumstances, the officer has manifested a "show of authority" restricting an individual's "freedom of movement." *Id.* at 317.

Thus, the question here is whether a reasonable person in defendant's position *would* have believed that his or her freedom of movement had been restricted by a police show of authority. We addressed a similar issue in *State v. Radtke*, 242 Or App 234, 255 P3d 543 (2011),[1] and concluded that a reasonable person would have believed that her freedom of movement had been restricted by a similar show of authority. In *Radtke*, an officer stopped the defendant on her bicycle. The officer believed that the defendant was under the influence of a stimulant, but did not believe that was sufficient to justify further investigation, nor did he believe that she had committed any other crime. *Id.* at 237. The officer asked the defendant if he could see her identification; when the defendant gave the officer her name and date of birth, the officer wrote the information down. *Id.* The officer also asked the defendant if she had any drugs, weapons, or anything

---

[1] Petition for review in *Radtke* is being held in abeyance pending a decision in *State v. Highley*, 219 Or App 100, 180 P3d 1230 (2008), *rev allowed*, 350 Or 130 (2011).

illegal on her. *Id.* The defendant showed the officer the contents of her pockets, which included a baggie containing methamphetamine. *Id.*

In analyzing whether the defendant was seized for purposes of Article I, section 9, we stated, "To clarify, our inquiry is not whether taking [the] defendant's information was by itself a stop; it is whether that action, combined with the immediately subsequent questioning, was a stop." *Id.* at 239. Citing earlier case law holding that "a reasonable person would perceive a limitation on his or her freedom if the person knew that he or she was the subject of a criminal investigation," we concluded that "taking a person's identification for the purpose of checking on the person's status is one way in which a police officer can show authority that, in combination with other circumstances, can convey to the person whose identification has been obtained that he or she is not free to leave." *Id.* at 239-40 (citing *State v. Thompkin,* 341 Or 368, 143 P3d 530 (2006); *State v. Hall,* 339 Or 7, 115 P3d 908 (2005)).

In *Radtke,* we noted that the only significant difference between the facts in *Radtke* and *Ashbaugh* was that,

> "in *Ashbaugh,* the officers took the defendant's identification, ran a warrant check, and returned the identification to her several minutes before beginning to question her; thus, while she was being questioned, the warrant check had ended and (according to the Supreme Court) a reasonable person in that situation would not have felt constrained."

*Radtke,* 242 Or App at 240. We stated that "calm and nonconfrontational questioning about illegal activity is not alone sufficient to reasonably create the impression of authoritative restraint," but concluded that a reasonable person in the defendant's position would have believed she was under investigation and not free to leave. *Id.* at 241.[2]

---

[2] In *Radtke,* we noted that the Supreme Court allowed review of *Highley,* 219 Or App 100 (the defendant's understanding that he was not free to leave was objectively reasonable when the officer requested defendant's identification, wrote it down, returned the license, then immediately returned to his police vehicle and ran a check). The issue on review is: "Under what circumstances, if any, is an officer's request for identification and running a warrants check a seizure under Article I, section 9, of the Oregon Constitution, if the officer has not restrained the person in any other way?" *Radtke,* 242 Or App at 239 n 2.

Similarly, in *State v. Parker*, 242 Or App 387, 394, 255 P3d 624 (2011),[3] we held that a reasonable person would not have felt free to leave when an officer asked the defendant, a passenger in a stopped vehicle, if he had any warrants, requested the defendant's identification, wrote down the defendant's name and date of birth, and immediately returned to his vehicle to run a check to determine if the defendant was the subject of any warrants. *See also State v. Zamora-Martinez*, 244 Or App 213, 260 P3d 603 (2011) (concluding that a reasonable person would not have felt free to leave when an Immigrations Customs Enforcement officer in plain clothes introduced himself to the defendant, asked for identification, asked where the defendant was from, and then asked for additional identification).

We reach the same conclusion here. The officer approached defendant's car, asked for identification, and immediately radioed dispatch to determine whether defendant was the subject of any warrants. When the officer went back to the car and returned defendant's identification, he immediately began asking defendant questions about his status as a registered sex offender. Unlike *Ashbaugh*, there was no pause between running the warrant check, returning the identification, and questioning defendant. Under the totality of the circumstances, we conclude that a reasonable person would believe that the officer had deprived defendant of his liberty or freedom of movement. Thus, the facts in this case constitute an unreasonable warrantless seizure under Article I, section 9, and the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.

---

[3] Petition for review in *Parker* is being held in abeyance pending a decision in *Highley*, 350 Or 130.