Argued and submitted September 30, 2011, affirmed August 1; appellant's petition for reconsideration filed August 23, and respondent's response to petition for reconsideration filed August 30, allowed by opinion November 21, 2012 See 253 Or App 574, 291 P3d 775 (2012)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## CODY GEAN CANFIELD,
*Defendant-Appellant.*

Washington County Circuit Court
C090743CR; A143570

283 P3d 438

David O. Ferry, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Karla H. Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant challenges his conviction for unlawful delivery of marijuana, ORS 475.860(2)(a), arguing that his consent to the search of his person was the product of an illegal stop. Defendant contends that the trial court erred in denying his motion to suppress evidence as a result of that search. We conclude that, under all the circumstances, a reasonable person in defendant's position would not have believed that the officer had intentionally and significantly interfered with defendant's liberty or freedom of movement. Accordingly, we conclude that the trial court properly denied defendant's motion to suppress and affirm.

The facts are uncontested. An officer in a patrol car in Beaverton saw defendant walking down the street. After the officer drove by, defendant crossed the street and walked quickly toward a mall. The officer made a U-turn and followed defendant. Defendant walked into a parking lot and got into a parked car on the passenger side. The car traveled a short distance in the parking lot and then parked in the parking lot again. The driver of the car and defendant got out of the car and began walking toward a fast-food restaurant.

The officer approached defendant and the driver and asked to speak with them. The officer told defendant that he saw defendant run across the street and that the officer thought it was strange that the car defendant was in had moved a short distance in the parking lot and then parked again. The officer asked defendant and the driver for identification, which they provided for him. The officer kept the identification long enough to write the numbers on his hand—approximately 30 seconds—and then returned the identification to defendant and the driver. The officer noticed that defendant had a folding knife in the pocket of his pants. The officer asked defendant if he had any weapons or drugs. Defendant told the officer that he had a pipe, which the officer suspected was a marijuana pipe.

The officer asked defendant and the driver if he could search them, and they both consented. The officer put defendant in a patdown or search position with his fingers interlaced behind his back. The officer told defendant that he

was not under arrest, that the search position was how the officer conducted searches, and that defendant was free to leave. The officer testified that defendant indicated that he understood when the officer told defendant that he was free to go. During the search, the officer found defendant's pipe and noticed the pipe contained a burnt residue that smelled like marijuana. The officer moved on to the car's driver and repeated the same process. In addition, the officer asked the driver if there was any marijuana in the car and asked for consent to search the car. The driver told the officer that there was marijuana worth $20 in the car and consented to the search. The officer found the marijuana in the car. The driver told the officer that he had met with defendant to buy the marijuana from him. Defendant also made incriminating statements to the officer. The officer arrested defendant, who was charged with unlawful delivery of marijuana.

Defendant filed a motion to suppress the evidence, arguing that all of the evidence resulted from an illegal stop. Following a hearing, the court denied defendant's motion to suppress. Following a stipulated facts trial, the court found defendant guilty as charged.

On appeal, defendant renews his argument that the evidence resulted from an illegal stop and contends that the trial court erred in denying his motion to suppress the evidence. In support of his argument, he relies on the state and federal constitutions. The state responds that the trial court properly denied defendant's motion to suppress the evidence. We agree with the state.

We review the trial court's denial of a motion to suppress for errors of law. *State v. Hall*, 339 Or 7, 10, 115 P3d 908 (2005). We are bound by the trial court's finding of fact if there is sufficient evidence in the record to support those findings. *Id.*

We begin with defendant's argument under the Oregon Constitution.[1] Specifically, Article I, section 9, of the Oregon Constitution provides:

[1] Because defendant does not make any separate arguments based on the Fourth Amendment, we do not separately consider whether the trial court erred in denying his motion to suppress the evidence under the federal constitution.

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

A warrantless seizure is *per se* unreasonable unless it falls within one of the exceptions to the warrant requirement. *State v. Baker*, 350 Or 641, 647, 260 P3d 476 (2011). In *State v. Ashbaugh*, 349 Or 297, 316, 244 P3d 360 (2010), the Supreme Court determined that a seizure of a person occurs "(a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) if a reasonable person under the totality of the circumstances *would* believe that (a) above has occurred." (Emphasis in original.) Whether an encounter is a constitutionally significant seizure depends on whether, under the totality of the circumstances, the officer has manifested a "show of authority" restricting an individual's "freedom of movement." *Id.* at 317. Thus, the question in cases such as this one is whether a reasonable person would have believed that his or her freedom of movement had been restricted by a police show of authority. *State v. Wright*, 244 Or App 586, 590, 260 P3d 755 (2011).

In several cases since the Supreme Court decided *Ashbaugh*, we have considered whether a stop occurs when an officer writes down a suspect's information. *See, e.g.*, *Wright*, 244 Or App 586; *State v. Parker*, 242 Or App 387, 255 P3d 624 (2011); *State v. Radtke*, 242 Or App 234, 255 P3d 543 (2011). In those cases, we have concluded that "taking a person's identification for the purpose of checking on the person's status is one way in which a police officer *can* show authority that, in combination with other circumstances, can convey to the person whose identification has been obtained that he or she is not free to leave." *Radtke*, 242 Or App at 239-40 (emphasis added).

In *Parker*, the defendant was a passenger in a car that officers stopped for a traffic violation. 242 Or App at 389. An officer asked the defendant if he had any outstanding warrants; the defendant said that he did not. *Id.* The officer

asked for the defendant's identification, wrote down the defendant's information, returned the identification, and immediately returned to the police vehicle. *Id.* at 389-90. We concluded that, under the totality of those circumstances—which included the fact that at no point did the officer indicate that the defendant was free to leave—a reasonable person would conclude that he or she was the subject of an investigation and not free to leave. *Id.* at 394. Accordingly, we held that the trial court erred in denying the defendant's motion to suppress. *Id.*

Similarly, in *Wright*, an officer approached the defendant's car in a parking lot and asked for the defendant's identification. 244 Or App at 588. The officer radioed the defendant's name to dispatch and learned that the defendant was a registered sex offender. The officer then began to ask the defendant questions about why he was sleeping in his car. We concluded that, under the totality of those circumstances, where the officer approached the defendant's car, asked for identification, radioed dispatch, and then immediately began asking the defendant questions about his status as a registered sex offender, a reasonable person would believe that the officer had deprived defendant of his liberty or freedom of movement. *Id.* at 592.

We reached the opposite conclusion in *State v. Jones*, 241 Or App 597, 250 P3d 452 (2011). There, the defendant was a passenger in a car that was stopped for a traffic violation. *Id.* at 599. The officer took the defendant's name and date of birth, but then told the defendant that he and another passenger were free to leave. *Id.* at 600. The officer asked the defendant to step out of the car and then asked the defendant if he had any drugs or weapons on him. When the defendant said that he did not, the officer asked for consent to search. The defendant turned around and placed a small rock of cocaine on the trunk of the car and assumed a standard search position. We concluded that there was no "show of authority" as required by *Ashbaugh* on the record. *Id.* at 604. There was only one officer talking to the defendant, there were no weapons drawn, and the officer testified that he spoke with the defendant "in the same tone he used when answering counsels' questions at the motion hearing." *Id.* Accordingly, we concluded that, under

the totality of those circumstances, a reasonable person in the defendant's situation would not have believed that the officer had intentionally and significantly interfered with his liberty or freedom of movement. *Id.*

Most recently, in *State v. Smith*, 247 Or App 624, 270 P3d 382 (2012), we concluded that the court had properly denied the defendant's motion to suppress. In that case, the defendant was a passenger in a car that was stopped for a traffic violation. *Id.* at 626. The officer asked the defendant for his name, which the officer wrote down. After another officer gave the driver a citation, the officer asked the defendant to step out of the car. The officer did not tell the defendant that the reason the officer asked the defendant to get out of the car was because the car needed to be towed. The officer asked the defendant if he had any weapons or other things he should not have. The defendant said that he had a pipe and several rocks of crack cocaine. The officer seized the items and arrested the defendant for possession of a controlled substance. *Id.* Although the officer never told the defendant that he was free to leave, "there is no evidence that weapons were drawn or that [the officer] raised his voice or otherwise spoke in a nonconversational manner." *Id.* at 628-29. There was a second officer present, but "the officers had not positioned themselves in a way to suggest that defendant was surrounded." *Id.* at 629. And "the officer's question whether defendant possessed any drugs or weapons was not a constitutionally significant 'show of authority,' and neither was his request that he step out of the car." *Id.* We concluded that the officer had not intentionally and significantly interfered with the defendant's liberty or freedom of movement when he asked the defendant to get out of the car. *Id.* Accordingly, we affirmed the trial court's denial of the motion to suppress.

Here, writing down defendant's information was one way that the officer showed authority that could convey to defendant that he was under investigation and not free to leave. *See State v. Parker*, 227 Or App 231, 233-34, 205 P3d 65 (2009), *rev den*, 349 Or 664 (2011) (it is a typical police practice to run a name for warrants after getting a name and birth date). The officer also told defendant that he had seen him engaging in strange behavior. But when the officer

told defendant to stand in the search position, the officer also told defendant that he was not under arrest and that he was free to leave. The officer testified that he did not raise his voice when he spoke with defendant. Under the totality of those circumstances, we conclude that a reasonable person in defendant's position would have believed that, before being informed that he was free to leave, his liberty and freedom of movement had been significantly interfered with; in other words, he was stopped. However, once the officer told him that he was free to leave, the stop ended; a reasonable person, at that point, would not have believed that the officer had intentionally and significantly interfered with his liberty or freedom of movement. Accordingly, the trial court properly denied defendant's motion to suppress.

Affirmed.