On appellant's petition for reconsideration filed August 23, 2012, and respondent's response to petition for reconsideration filed August 30, reconsideration allowed; former disposition withdrawn; former opinion (251 Or App 442, 283 P3d 438) modified and adhered to as modified; reversed and remanded November 21, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CODY GEAN CANFIELD,
*Defendant-Appellant.*

Washington County Circuit Court
C090743CR; A143570

291 P3d 775

Peter Gartlan, Chief Defender, and David O. Ferry, Deputy Public Defender, Office of Public Defense Services, for petition.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Karla H. Ferrall, Assistant Attorney General, for response.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

In *State v. Canfield*, 251 Or App 442, 283 P3d 438 (2012), we rejected defendant's argument that inculpatory evidence was seized after an unlawful stop. Defendant petitions for reconsideration and urges us to change our affirmance of the trial court to a reversal and remand. The state, for its part, acknowledges that our opinion resulted from an erroneous understanding of the facts and, for that reason, we should allow the petition for reconsideration, but contends that we should nonetheless let stand our earlier disposition on alternative grounds. We agree with defendant. We therefore allow the petition, and we now reverse and remand.

We take the undisputed facts from our earlier opinion:

"An officer in a patrol car in Beaverton saw defendant walking down the street. After the officer drove by, defendant crossed the street and walked quickly toward a mall. The officer made a U-turn and followed defendant. Defendant walked into a parking lot and got into a parked car on the passenger side. The car traveled a short distance in the parking lot and then parked in the parking lot again. The driver of the car and defendant got out of the car and began walking toward a fast-food restaurant.

"The officer approached defendant and the driver and asked to speak with them. The officer told defendant that he saw defendant run across the street and that the officer thought it was strange that the car defendant was in had moved a short distance in the parking lot and then parked again. The officer asked defendant and the driver for identification, which they provided for him. The officer kept the identification long enough to write the numbers on his hand—approximately 30 seconds—and then returned the identification to defendant and the driver. The officer noticed that defendant had a folding knife in the pocket of his pants. The officer asked defendant if he had any weapons or drugs. Defendant told the officer that he had a pipe, which the officer suspected was a marijuana pipe.

"The officer asked defendant and the driver if he could search them, and they both consented. The officer put defendant in a patdown or search position with his fingers interlaced behind his back. The officer told defendant that he

was not under arrest, that the search position was how the officer conducted searches, and that defendant was free to leave. The officer testified that defendant indicated that he understood when the officer told defendant that he was free to go. During the search, the officer found defendant's pipe and noticed the pipe contained a burnt residue that smelled like marijuana. The officer moved on to the car's driver and repeated the same process. In addition, the officer asked the driver if there was any marijuana in the car and asked for consent to search the car. The driver told the officer that there was marijuana worth $20 in the car and consented to the search. The officer found the marijuana in the car. The driver told the officer that he had met with defendant to buy the marijuana from him. Defendant also made incriminating statements to the officer. The officer arrested defendant, who was charged with unlawful delivery of marijuana.

"Defendant filed a motion to suppress the evidence, arguing that all of the evidence resulted from an illegal stop. Following a hearing, the court denied defendant's motion to suppress. Following a stipulated facts trial, the court found defendant guilty as charged."

*Id.* at 443-44. We held that, when the officer took defendant's identification and wrote down his information and then asked defendant if he was carrying any weapons or drugs, those actions constituted a stop that was not based on reasonable suspicion and therefore was a violation of defendant's right to be free from unreasonable seizure under Article I, section 9, of the Oregon Constitution. *Id.* at 445-48. We also held, however, that, when the officer told defendant that he was free to leave, the stop ended, and that, therefore, the consent to search was untainted by unlawful conduct and rendered the subsequent search lawful under the consent exception to the warrant requirement. *Id.* at 448. Consequently, we affirmed.

In his petition for reconsideration, defendant raises two arguments. First, he argues that, when the officer told him he was free to leave, that statement did not end the stop, because the officer also had asked defendant to assume a patdown position with his fingers interlaced behind his back. According to defendant, a reasonable person in defendant's

situation would surely have believed that his liberty of movement had been significantly interfered with and, for that reason, the officer's conduct effected a stop under *State v. Ashbaugh*, 349 Or 297, 316-17, 244 P3d 360 (2010). If we were writing on a clean slate, or even if we were free to apply our own commonsense assumptions about what reasonable people in defendant's position would or would not believe, we might well agree with defendant. Indeed, it is possible that, as defendant maintains, we overread *Ashbaugh*.

We need not decide that question here, however, because defendant's second argument has merit. He points out, correctly, that the conclusion we announce in the last paragraph conflicts with the undisputed factual account that we relate at the beginning of the opinion. In particular, we held in the last paragraph that the stop ended when the officer told defendant he was free to leave, so the consent that he provided at that juncture was not unlawful:

> "Here, writing down defendant's information was one way that the officer showed authority that could convey to defendant that he was under investigation and not free to leave. *See State v. Parker*, 227 Or App 231, 233-34, 205 P3d 65 (2009), *rev den*, 349 Or 664 (2011) (it is a typical police practice to run a name for warrants after getting a name and birth date). The officer also told defendant that he had seen him engaging in strange behavior. But when the officer told defendant to stand in the search position, the officer also told defendant that he was not under arrest and that he was free to leave. The officer testified that he did not raise his voice when he spoke with defendant. Under the totality of those circumstances, we conclude that a reasonable person in defendant's position would have believed that, before being informed that he was free to leave, his liberty and freedom of movement had been significantly interfered with; in other words, he was stopped. *However, once the officer told him that he was free to leave, the stop ended; a reasonable person, at that point, would not have believed that the officer had intentionally and significantly interfered with his liberty or freedom of movement.* Accordingly, the trial court properly denied defendant's motion to suppress."

251 Or App at 447-48 (emphasis added). The problem with this conclusion is that it misstates the sequence of events.

Defendant consented to the search *before* he was told that he was free to leave, that is, *during*, and not *after*, the unlawful stop. Such consent is itself unlawfully obtained and cannot justify a warrantless search absent reasonable suspicion. *State v. Hall*, 339 Or 7, 36, 115 P3d 908 (2005).

The state does not contest this conclusion in its response to defendant's petition for reconsideration. Rather, the state argues that we should grant the petition but affirm on alternative grounds. According to the state, the police officer did not stop defendant by telling him that he was acting strangely, asking for his identification, writing down the information, and asking him if he was carrying weapons or drugs. Thus, the state argues, he gave voluntary consent to search before any stop occurred. We thoroughly discussed this issue in our original opinion, *Canfield*, 251 Or App at 445-48, and the state raises no new argument. We therefore adhere to the conclusion in our original opinion that the officer's conduct effected a stop.

Reconsideration allowed; former disposition withdrawn; former opinion modified and adhered to as modified; reversed and remanded.