Argued and submitted April 30, 2012, reversed and remanded April 3, petition for review denied July 25, 2013 (353 Or 868)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RUDY E. TOVAR,
*Defendant-Appellant.*

Jackson County Circuit Court
094541FE; A145510

299 P3d 580

Jonah Morningstar, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

ARMSTRONG, P. J.

### ARMSTRONG, P. J.

Defendant appeals a judgment of conviction for unlawful possession of marijuana, ORS 475.864, arguing that the trial court erred in denying, in part, his motion to suppress evidence obtained as a result of a seizure and search by police officers after the police had stopped a vehicle in which defendant was a passenger. We conclude that statements made by defendant during the time that he was unlawfully seized should have been suppressed but reject defendant's contention that the court erred in denying suppression of the marijuana that the police seized from defendant's backpack.

We review a court's denial of a suppression motion for legal error and defer to the court's findings of historical fact if there is constitutionally sufficient evidence to support them. *State v. Soto*, 252 Or App 50, 51, 284 P3d 1254, *rev den*, 353 Or 127 (2012). In the absence of express trial court findings, we resolve factual disputes in a manner consistent with the court's ultimate conclusions. *State v. Hall*, 339 Or 7, 10, 115 P3d 908 (2005). We discuss the facts consistently with that standard.

While on patrol, Sergeant Sickler of the Jackson County Sheriff's Department stopped an automobile that he had observed to be speeding and swerving in its lane. Sickler asked the driver for her license, registration, and insurance documents; he also asked defendant, who was riding in the front passenger's seat, for his identification. Defendant had no identification, but he provided Sickler with his name and date of birth. Sickler, a certified drug recognition evaluator, thought that defendant appeared lethargic and slow in responding. Sickler also smelled a moderate odor of marijuana coming from the car, although he saw no smoke or other visible evidence of marijuana use—either before he stopped the vehicle or during his interaction with its occupants.

Sickler told the driver and defendant to "stay put," returned to his patrol car, and ran a warrant check on both the driver and defendant. Sickler then returned to the driver's side of the stopped car and asked the driver and defendant if there was any marijuana in the car; they both

responded, "No." The driver appeared nervous when Sickler questioned her about marijuana, and he asked her for consent to search the car. She asked Sickler if she had to consent to the search, and he responded that she did not. Sickler asked again for consent to search the car, and the driver said, "I guess." Sickler then asked the driver to step out of her car and wait on the bumper of Sickler's patrol car.

While Sickler was seeking consent from the driver to search her car, Deputy Murillo arrived at the scene of the stop, positioned himself at the passenger's door, and watched defendant. Once Sickler had obtained the driver's consent to search the car, he instructed Murillo to have defendant step out of the car so that Sickler could conduct the search. Defendant complied with that direction, and, although nothing about defendant raised his suspicions, Murillo conducted a patdown of defendant to search for weapons—a practice that Murillo described as "just something that I do if somebody is going to step out of [a] vehicle." Murillo found no weapons, but he did feel a small canister in defendant's front coat pocket. Murillo asked defendant about the canister, but defendant did not give a clear answer. Murillo did not pursue the matter further with defendant and asked him to wait near the front of the patrol car; Murillo then told Sickler what he had felt in defendant's pocket.

Acting on that information, Sickler, who had not yet begun a search of the car, approached defendant and looked into defendant's coat pocket—which was open enough to render its contents visible. In the pocket, Sickler saw a clear canister that looked like it contained marijuana. Sickler asked defendant whether the canister contained marijuana, and, notwithstanding defendant's denial that it did, Sickler seized the canister and asked defendant to sit on the bumper of the patrol car, next to the driver.

Sickler proceeded to search the car, beginning with the area in which defendant had been sitting. Sickler discovered a backpack there, which defendant acknowledged was his. Sickler asked whether the backpack contained marijuana, and, after hesitating, defendant answered, "No." Because the backpack was heavy, and because defendant had hesitated, Sickler then asked whether there were pounds of

marijuana in the backpack, and defendant replied, "I don't know about pounds." Defendant did not answer when Sickler subsequently asked if the backpack contained ounces of marijuana, but, when asked if he was dealing marijuana, defendant said, "No."

Sickler twice sought defendant's consent to search the backpack, and defendant twice refused. Although Sickler did not raise his voice during the requests, his demeanor became "more stern." After the refusals, Sickler told defendant that "based on the information that [Sickler] had[, he] felt that [he] could apply for a warrant," and, "if a warrant was granted[,] that the incident would be prolonged." He went on to say, however, that they "could take care of it tonight if [defendant] consented to the opening of the bag." Defendant responded by giving Sickler permission to look into the backpack, inside of which Sickler discovered slightly less than one pound of marijuana.

Defendant was indicted for unlawful possession of marijuana, ORS 475.864. He pleaded not guilty and moved to suppress all evidence resulting from the stop, arguing that it had been obtained in violation of Article I, section 9, of the Oregon Constitution.[1] Defendant contended that he had been unlawfully stopped when Sickler first asked for his identification, that he had been unlawfully searched during the pat down, and that his consent to search the backpack was both involuntary and the product of the prior unlawful acts.

The state argued in response that defendant's consent was valid. Without conceding that Murillo's pat down of defendant was unlawful, the state argued that the results of the pat down could be ignored because "no one testified that that led * * * to a basis for asking for consent to search." The state also argued that, without regard to defendant's consent, the search of the backpack was lawful under the automobile exception to the warrant requirement. The state offered no arguments about the admissibility of defendant's statements.

---

[1] Article I, section 9, provides, as relevant, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

At the close of the hearing, the court granted defendant's suppression motion in part. It concluded that defendant had been lawfully stopped when Sickler requested defendant's identification, that the subsequent pat down search of defendant was unlawful, and that there was no link between the pat down search and the search of defendant's backpack. Further, the court concluded that Sickler was justified in searching defendant's backpack under the automobile exception to the warrant requirement, as articulated in *State v. Smalley*, 233 Or App 263, 225 P3d 844, *rev den*, 348 Or 415 (2010). Accordingly, the court suppressed the evidence discovered on defendant's person as a result of the pat down search but declined to suppress any of defendant's statements or the marijuana from the backpack. Following the court's suppression decision, defendant entered a conditional guilty plea, reserving the right to appeal the court's suppression order.

Defendant contends on appeal that the trial court erred by not suppressing his incriminating statements and the marijuana from the backpack. He contends that he was seized when Sickler told him to "stay put" in the car and that that stop was unlawful because Sickler lacked reasonable suspicion to believe that defendant had committed a crime. He further argues that Sickler obtained defendant's subsequent consent to search the backpack—as well as defendant's other incriminating statements—through exploitation of the unlawful stop, including the unlawful pat down search. The state concedes that defendant was unlawfully seized and searched at the point that Murillo conducted the pat down, but it argues that the discovery of the backpack, defendant's consent to search it, and defendant's incriminating statements were not the product of any unlawful police conduct, because the backpack would have been found even if defendant had not been searched.

Relying on *Smalley*, the state also argues that, in any event, Sickler was justified in searching the backpack under the automobile exception to the warrant requirement, because the car was mobile at the time of the stop and Sickler had probable cause to believe that contraband would be found in it. Defendant responds that Sickler lacked probable cause to believe that defendant's backpack contained marijuana

and, therefore, that the automobile exception does not apply to the search of the backpack.

Because this case involves multiple articles of evidence, we begin with an iteration of our overarching inquiry: We must determine whether each item of evidence that the state seeks to introduce must be suppressed because it was obtained in violation of defendant's rights under Article I, section 9. *See Hall*, 339 Or at 22. In doing so, we are mindful of the purpose of Oregon's exclusionary rule, which is to restore a defendant to the same position "as if the government's officers had stayed within the law." *State v. Davis*, 295 Or 227, 234, 666 P2d 802 (1983). Thus, where evidence is obtained in violation of a defendant's rights under Article I, section 9, the evidence must be suppressed unless the state can establish that the evidence did not, in fact, derive from the violation.

Two items of evidence are at issue on appeal. The first, which predominated the parties'—and particularly the state's—arguments on appeal, is the nearly one pound of marijuana discovered in defendant's backpack. The second is defendant's inculpatory statements in response to questioning about the backpack. For the reasons that follow, we conclude that the trial court properly denied defendant's suppression motion as to the marijuana that was found in the backpack; however, the trial court erred in failing to suppress defendant's statements about the backpack and its ownership. Accordingly, we reverse.

We begin by determining if and when defendant was unlawfully seized. Defendant argues that he was seized when Sickler ordered him to "stay put" because, under those circumstances, a reasonable person would not have felt free to end the encounter and leave. *State v. Ashbaugh*, 349 Or 297, 244 P3d 360 (2010). The state ignores Sickler's order and argues that the mere request for defendant's name and date of birth did not constitute a seizure and that "any incidental detention of defendant as a passenger during the time of a lawful stop of the driver does not implicate Article I, section 9[.]" *See, e.g., State v. Ehret*, 184 Or App 14, 17, 55 P3d 518 (2002), *rev den*, 337 Or 84 (2004). Nevertheless, the state concedes that Murillo unlawfully seized and searched

defendant when Murillo patted him down for weapons without having any specific, articulable safety concerns.

Because no evidence subject to defendant's suppression motion was obtained between the time that Sickler directed defendant to "stay put" and the moment that Murillo asked defendant to step out of the vehicle and subjected him to a pat down search, we need not determine whether defendant was unlawfully seized before the pat down search, as defendant argues. Instead, we accept the state's concession and agree that defendant was unlawfully seized when he was ordered out of the car and subjected to a pat down search.

The state largely ignores the effect of that seizure on the admissibility of defendant's statements, instead focusing its arguments on the marijuana found in defendant's backpack. At oral argument, the state acknowledged that "there may be some questions about the statements" but argued that "defendant made no specific challenge to the statements of ownership * * * either below or above." Curiously, in its brief, the state acknowledged that defendant had made at least one specific challenge to his statements— *viz.*, that "[d]efendant now contends that he would not have made the incriminating statements but for the unlawful patdown"—but it argued that that challenge had not been raised below.

We disagree with the state. Defendant sought in his suppression motion an order "suppressing any and all objects, information, *statements* and observations" obtained as a result of the traffic stop. (Emphasis added.) At the suppression hearing, defendant argued that he had been unlawfully stopped when Sickler asked for his identification and, as a result, that "[t]he identity of [defendant], the marijuana on his person, the marijuana in his backpack[,] *and any statements he made*" should be suppressed. (Emphasis added.) On appeal, defendant argues that, because his inculpatory statements were made during an unlawful seizure, those statements are necessarily the product of that seizure. That is, defendant argues that, but for the unlawful seizure, he could have left at any time before Sickler began questioning him.

We agree that defendant's statements were made during the unlawful seizure; nothing in the record would suggest that the seizure had concluded before Sickler began questioning him. *Cf. Ashbaugh*, 349 Or at 307-08, 316-18 (initial unlawful seizure ceased when officers returned the defendant's identification and informed her that they were arresting her husband; subsequent questioning of the defendant did not amount to second unlawful seizure). Accordingly, defendant's statements must be suppressed if we are to restore him to the same position "as if the government's officers had stayed within the law." *Davis*, 295 Or at 234; *see, e.g., State v. Steffens*, 250 Or App 742, 747, 282 P3d 888 (2012) (unlawful seizure required suppression of statements and evidence discovered during subsequent patdown); *State v. Wright*, 244 Or App 586, 592, 260 P3d 755 (2011) (trial court erred under Article I, section 9, in denying the defendant's motion to suppress statements made during an unlawful seizure); *State v. Hawkins*, 225 Or App 355, 364-65, 201 P3d 239 (2009) (statements derive from unlawful conduct if made during an unlawful seizure).

Our conclusion that defendant was unlawfully seized does not mean that the marijuana discovered in his backpack must be suppressed, however. The state presents two alternative grounds by which it argues that it obtained the marijuana lawfully. First, the state contends that Sickler's discovery of the backpack was derived from the driver's consent to search the car—not the unlawful seizure or patdown search of defendant—and that the subsequent search of the backpack resulted from defendant's valid consent to the latter search. Second, the state argues that the automobile exception to the warrant requirement provided a lawful basis to search the backpack that preceded the officers' unlawful seizure of defendant and, hence, was independent of the seizure. Because we conclude that it is dispositive, we address only the state's reliance on the automobile exception.

We begin by reviewing the operation of the automobile exception before addressing the parties' arguments as to its application in this case. Under Article I, section 9, a warrantless search is *per se* unreasonable unless it falls within one of the few specifically established and carefully

delineated exceptions to the warrant requirement. *E.g.*, *State v. Snow*, 337 Or 219, 223, 94 P3d 872 (2004). One of those exceptions is the "exigent circumstances exception," under which the police may conduct a warrantless search when both probable cause and exigent circumstances exist. *Id.* The automobile exception is "a subset of the exigent circumstances exception" under which the "mobility of a vehicle, by itself, creates an exigency." *State v. Meharry*, 342 Or 173, 177, 149 P3d 1155 (2006). Thus, under the automobile exception, police may conduct "an immediate warrantless search of the entire automobile for the object of the search" if (1) the police have "probable cause to believe that [the] lawfully stopped automobile *** contains contraband or crime evidence" and (2) the automobile is mobile at the time that it is stopped by police. *State v. Brown*, 301 Or 268, 277, 721 P2d 1357 (1986). Thus, we have held that, under that exception, "the police may search any area of the vehicle or any container within the vehicle in which they have probable cause to believe that the contraband or crime evidence may be found." *Smalley*, 233 Or App at 267.

The state argues that, based on Sickler's observation of the driver's impaired driving, defendant's lethargic demeanor, and the moderate odor of marijuana in the car, Sickler had probable cause to believe that there was marijuana in the car. Relying on *Smalley*, the state argues that, because marijuana constitutes "contraband," probable cause to believe that the car contained marijuana justified a search of the entire car, including defendant's backpack. Defendant argues, in turn, that *Smalley* required Sickler to have probable cause to believe that defendant's backpack specifically, not the car generally, contained marijuana. The car's mobility is not in dispute.

The defendant in *Smalley* had been a passenger in a lawfully stopped car. He successfully moved to suppress evidence of a large amount of marijuana that was discovered in his backpack during a driver-consented search of the car. 233 Or App at 265. The state appealed, reprising the argument that it had made to the trial court, *viz.*, the automobile exception applied to the marijuana because, when the officer performed the search, he had probable cause to believe that the car contained marijuana. *Id.* at 266. The

defendant did not dispute that there was probable cause to believe that marijuana would be found in the car. *Id.* at 268. Further, we concluded—and the defendant did not dispute— that the extensive testimony by the officer during the suppression hearing was "more than sufficient to establish that [the officer] believed that [the] defendant's backpack would contain at least some amount of contraband and that his belief was reasonable." *Id.*

Thus, the question presented to us on appeal was whether the automobile exception required the officer to have probable cause to believe that evidence of a *criminal offense*—as opposed to a mere violation—would be found. *Id.* at 268-69. The defendant argued that it did and, accordingly, because possession of less than one ounce of marijuana is not a criminal offense, *see* ORS 475.864(3), the mere odor of marijuana, without some indication of quantity, was insufficient to trigger the application of the automobile exception.

Relying on *Brown*, we rejected the defendant's argument, concluding that, "[b]y using the phrase, 'contraband or crime evidence,' the [*Brown*] court signaled its understanding that the two things were not identical and that probable cause to believe in the presence of either could justify an automobile search." *Smalley*, 233 Or App at 270-71 (quoting *Brown*, 301 Or at 277). We concluded that the officer "had probable cause to believe that the lawfully stopped vehicle was capable of movement and that it contained contraband[,]" that that belief was objectively reasonable, and that the search of the defendant's backpack was therefore lawful under the automobile exception. *Id.* at 271. Accordingly, we reversed.

Defendant points to two passages in *Smalley* that he contends stand for the proposition that the automobile exception requires an officer to have probable cause to believe that each container in an automobile that the officer wishes to search contains contraband. In the first passage, which occurred at the outset of our discussion, we said that the automobile exception allows the police to "search any area of the vehicle *or any container within the vehicle in which they have probable cause to believe that the contraband or*

*crime evidence may be found.*" *Id.* at 267 (emphasis added). In the second, we explained that "the state must show (1) that the truck was mobile at the time that [the officer] stopped it and (2) that probable cause existed for the search of the backpack—that is, that [the officer] subjectively and reasonably believed *that defendant's backpack contained contraband or crime evidence.*" *Id.* at 268 (emphasis added).

We acknowledge that, read alone, those passages provide some support for defendant's position in this case, *viz.*, that the automobile exception requires probable cause to believe that each container that the officer wishes to search within an automobile contains contraband. However, when viewed in light of *Brown*, we think that defendant's understanding of those passages is flawed. Thus, we turn to the rationale behind the Oregon Supreme Court's recognition of the automobile exception in *Brown* before returning to the statements in *Smalley* on which defendant relies.

Although the automobile exception is an exception to the warrant requirement, the Supreme Court in *Brown* nevertheless tied the exception to the hypothetical warrant that the police *could* obtain but for the exigency that an automobile's mobility creates. 301 Or at 276. Thus, the exception is premised on the notion that "the privacy rights of our citizens are subjected to no greater governmental intrusion if the police are authorized to conduct an immediate on-the-scene search of the vehicle than to seize the vehicle and hold it until a warrant is obtained." *Id.* To that end, in recognizing the exception, the Supreme Court emphasized that "[t]he police ticket to admission into a stopped mobile vehicle is probable cause. The test is whether a magistrate could issue a constitutionally sound search warrant based on the probable cause articulated by the officers." *Id.*

Of course, just as a search may exceed the scope of a warrant, a search under the automobile exception is only reasonable within its limits. As the Supreme Court noted in *Brown*, the scope of a search under the exception is defined by

"'the object of the search and the places in which there is probable cause to believe that it may be found. Just as

probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase. Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab.'"

*Id.* at 279 (quoting *United States v. Ross*, 456 US 798, 824, 102 S Ct 2157, 72 L Ed 2d 572 (1982)).

Notably, those two inquiries are separate. Under the first, we must determine whether the search was justified by the automobile exception. If so, under the second, we must determine whether the search nevertheless exceeded its reasonable scope. That is the approach that the court followed in *Brown* even though the existence of probable cause was uncontested. *Id.* (first noting that the existence of probable cause to support the search had not been challenged, then "hold[ing] that the scope of the warrantless search of the automobile was reasonable").

Returning to defendant's reliance on *Smalley*, we note that the test for whether the police had probable cause to conduct a search under the automobile exception—*viz.*, "whether a magistrate could issue a constitutionally sound search warrant based on the probable cause articulated by the officers," *Brown*, 301 Or at 276—is inherently fact specific. Thus, where the probable cause articulated by the officer points unequivocally to a specific container within a vehicle, as it did in *Smalley*, the particularity requirement of the warrant requirement centers the inquiry on whether there is probable cause to issue a search warrant to search that container. *See State v. McDowell*, 211 Or App 341, 347, 155 P3d 877 (2007) ("The particularity requirement limits a search to those places where a magistrate has determined that there is probable cause to search."). In those circumstances, *Brown*'s second inquiry is of little import, because the scope of the hypothetical warrant is limited to the particular container to be searched.

Here, however, the facts differ. Before he searched the automobile, Sickler had observed the driver driving in

a manner indicating her impairment. On stopping the car, Sickler smelled a moderate odor of marijuana and observed defendant acting in a lethargic manner. Further, Sickler had seen no smoke or other visible evidence of marijuana use—or disposal—before he stopped the car or during his interaction with its occupants. As defendant points out, nothing in those facts—*viz.*, the facts known by Sickler at the time of his initial interaction with the car's occupants—indicates that Sickler had probable cause to believe that the source of the marijuana odor was defendant's backpack—or even that the backpack existed. Nevertheless, had Sickler sought a search warrant at that time, a magistrate could have issued a constitutionally sound search warrant authorizing a search of the vehicle and its contents, based on the existence of probable cause to believe that some amount of marijuana was in the vehicle.[2] *See State v. Bennett*, 301 Or 299, 304, 721 P2d 1375 (1986) (where officers smelled marijuana from the time the car door was first opened, "*Brown* would uphold the search as constitutionally valid because a magistrate could have authorized the search of the entire vehicle and its contents"); *cf. State v. Cromwell*, 109 Or App 654, 658, 820 P2d 888 (1991) (probable cause to search vehicle for additional marijuana where officer discovered marijuana in two separate locations in vehicle).[3]

_____

[2] In arguing that Sickler did not have probable cause that defendant's backpack contained marijuana, defendant cites a number of our cases that address whether reasonable suspicion supports the investigation of a passenger in a lawfully stopped vehicle for possession of marijuana. *See, e.g, State v. Morton*, 151 Or App 734, 738-39, 951 P2d 179 (1997), *rev den*, 327 Or 521 (1998) (general odor of marijuana in a car does not give rise to a reasonable suspicion that passenger possesses marijuana). However, those cases are readily distinguishable for two reasons. First, the central issue in those cases was whether there was reasonable suspicion to believe that the passenger was engaged in criminal activity. *See, e.g., id.* ("The question is whether these facts give rise to a reasonable inference *that defendant had committed a crime.*" (Emphasis added.)). Here, in contrast, the inquiry centers on probable cause to believe in the existence of contraband. *See Smalley*, 233 Or App at 270-71. Second, in those cases the association of the marijuana with the *vehicle*—as opposed to the defendant—was undisputed. *E.g., Morton*, 151 Or App at 739. Although that association alone is insufficient to implicate a passenger in criminal activity, it is all that the automobile exception requires for a search of the automobile for marijuana.

[3] Both defendant and the dissent in *Cromwell* rely on *State v. Tallman*, 76 Or App 715, 712 P2d 116 (1985), for the proposition that the discovery of less than an ounce of marijuana does not, on its own, create probable cause to search for more marijuana. *Cromwell*, 109 Or App at 660-61 (Butler, J., dissenting). As we explained in *Smalley*, however, *Tallman* was decided in the context of a search

The record establishes that Sickler believed at the time of his initial encounter with the car's occupants that there was marijuana in the car. His subjective belief about that was objectively reasonable. In light of that, the automobile exception provided authority at that point for Sickler to search the car for marijuana.

We turn, finally, to whether the search of defendant's backpack was reasonably within the scope of the automobile exception. We note that, aside from the discussion set out above, the court in *Brown* did not provide a test to determine whether the scope of an officer's search under the automobile exception was reasonable. However, given the automobile exception's justification, we think that its proper scope is defined by the warrant that the officer *could* have obtained; here, that warrant would have authorized a search of the vehicle and its contents for marijuana. *See Bennett*, 301 Or at 304. Pursuant to such a warrant, Sickler could search any compartment or container reasonably expected to contain the object of the search. Defendant's backpack was such a container, and its search did not unreasonably exceed the permissible scope of a search under the automobile exception to the warrant requirement.

In summary, we conclude that the trial court erred in failing to suppress defendant's statements about the backpack and its contents because those statements were made during the course of an unlawful seizure. The trial court correctly refused to suppress the backpack and its contents, because the automobile exception justified Sickler's search of both the vehicle and the backpack.

Reversed and remanded.

---

incident to arrest, and its reasoning does not extend to searches under the automobile exception. *Smalley*, 233 Or App at 269.