Argued and submitted December 8, 2011, reversed and remanded
September 26, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHRISTOPHER JOSEPH SMITH,
*Defendant-Appellant.*

Marion County Circuit Court
10C40723; A146302

287 P3d 1210

Ben Eder argued the cause for appellant. With him on the briefs was William Uhle.

Susan G. Howe, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

DUNCAN, J.

## DUNCAN, J.

In this criminal case, defendant appeals the trial court's judgment convicting and sentencing him for one count of driving under the influence of intoxicants (DUII), ORS 813.010. Defendant assigns error to the trial court's denial of his motion to suppress evidence obtained following what he argues was an unlawful police detention. Defendant contends that the detention violated his right to be free from unreasonable searches and seizures under Article I, section 9, of the Oregon Constitution because the police lacked reasonable suspicion when they stopped him. We agree and, therefore, reverse and remand.

Whether a police officer's interaction with a private citizen amounts to a "seizure" under Article I, section 9,[1] is a question of law that we review for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We are bound by the trial court's findings of historic fact, provided that there is constitutionally sufficient evidence in the record to support them. *State v. Hall*, 339 Or 7, 10, 115 P3d 908 (2005). If the trial court did not make express findings, we presume that it resolved factual disputes in a manner consistent with its ultimate conclusion. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). We state the facts consistently with those standards.

While on duty at approximately 4:00 a.m. on January 16, 2010, Silverton Police Officer Stearns saw defendant driving a car in an empty parking lot. After parking the car away from any of the designated parking spots, defendant exited from the driver's door, walked around the car, and opened the rear passenger door. Another man, Nelson, exited the car and began a heated discussion with defendant. Stearns approached the two in his patrol car with his headlights on but without activating his overhead lights. Stearns stopped between one and two car lengths away from

---

[1] Article I, section 9 provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

defendant and Nelson, and he observed defendant mouth a swear word upon seeing Stearns. He also saw Nelson turn his back to Stearns's patrol car as it approached. Stearns radioed a nonemergency request for cover and exited the patrol car.

As Stearns walked toward the men, defendant's girlfriend, Bader, stepped out of the front passenger seat of the car. She asked Stearns for help dealing with Nelson, who was intoxicated and refused to leave. Stearns instructed Bader and defendant to stand by the car while he dealt with Nelson.

Approximately one minute after Stearns radioed his request for cover, Sergeant Gathercoal arrived in the parking lot with his overhead lights on. Gathercoal parked his patrol car across the entryway of the parking lot, blocking entrance or exit by any vehicle. He asked defendant and Bader for identification, obtained their driver's licenses, and ran their names for warrants. Defendant was aware that Gathercoal was processing his identification. After learning that there were no warrants for defendant or Bader, Gathercoal questioned them about the situation with Nelson.

At approximately the same time, Officer Stearns and another cover officer who had arrived on the scene took Nelson into custody on an outstanding warrant. Stearns then returned to defendant and Bader to obtain more information about Nelson. At that point, Stearns noticed that defendant appeared intoxicated, so he initiated a DUII investigation of defendant. The investigation produced the evidence that defendant moved to suppress, including a .17 blood-alcohol content breath test. Neither party contests that defendant was seized once the DUII investigation began; the issue is whether he was seized before that point.

On appeal, defendant argues that he was detained and that the evidence he moved to suppress was the product of that illegal detention. Specifically, defendant argues that, in light of the totality of the circumstances, he was stopped by Stearns's and Gathercoal's actions, including Stearns's request that he and Bader stand by the car, Gathercoal's blocking of the parking lot exit after arriving with his overhead lights flashing, and Gathercoal's taking of defendant's driver's license and checking it for warrants. According to defendant, the stop violated Article I, section 9,

because it was not supported by reasonable suspicion, having occurred before Stearns observed any signs that defendant was intoxicated.

The state makes three arguments in response. First, it argues that defendant did not preserve his legal argument because he failed to ask the trial court to consider Gathercoal's warrant check as a relevant factor under the totality of the circumstances test. Second, the state argues that defendant was not seized until Stearns began to suspect him of DUII, at which point Stearns had reasonable suspicion to stop him. Finally, in the alternative, the state argues that the officers did seize defendant before they suspected him of DUII, but that they had reasonable suspicion to do so based on the incident with Nelson.

For the reasons explained below, we conclude that (1) defendant preserved his argument, (2) he was stopped when Sergeant Gathercoal obtained his driver's license and ran a warrant check on it, (3) the stop was unlawful because Gathercoal lacked reasonable suspicion, and (4) the evidence against defendant should have been suppressed because it derived from the preceding illegal stop. *See Hall*, 339 Or at 25 (discussing requisite causal link between unlawful police conduct and evidence sought to be suppressed). Because we hold that acquiring defendant's driver's license and running a warrant check was sufficient to constitute a stop, we express no opinion on whether the officers' other actions would have been sufficient to constitute a stop under the totality of the circumstances.

We begin with preservation. An issue is preserved for appellate review if the trial court had the opportunity to "identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). Preservation does not require a party to "assert a separate legal theory as to why each element in the 'totality of circumstances' or each successive event in a sequence of events amounts to a 'seizure.'" *State v. Amaya*, 336 Or 616, 629, 89 P3d 1163 (2004).

Defendant adequately preserved his argument. At the hearing, defense counsel elicited testimony from both officers regarding defendant's driver's license and warrant check. On direct examination of defendant and Bader, defense counsel brought out the fact that Gathercoal had asked them for identification and had processed that identification. Finally, in oral argument, defense counsel referred the trial court to *Hall*, in which the Supreme Court held that an officer stopped the defendant by taking his identification and running a warrant check.

Given the nature of defense counsel's motion, the evidence presented, and the legal sources cited, the trial court was well aware that the issue before it was whether, under the totality of the circumstances, Stearns and Gathercoal stopped defendant before observing any signs that defendant was intoxicated. Indeed, in its letter opinion denying defendant's motion to suppress, the court specifically mentioned Stearns's request that defendant and Bader stand behind their car, Gathercoal's blocking of the exit, and Gathercoal's request for identification. Thus, defendant presented sufficient factual and legal information to alert the state and the trial court to his argument regarding the driver's license and warrant check.

We turn to the interaction between defendant and the police. The Supreme Court recently held that

"[a] 'seizure' of a person occurs under Article I, section 9, of the Oregon Constitution: (a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) if a reasonable person under the totality of the circumstances *would* believe that (a) above has occurred."

*State v. Ashbaugh*, 349 Or 297, 316, 244 P3d 360 (2010) (emphasis in original; footnote omitted).

A stop is a type of seizure that must be supported by reasonable suspicion of criminal activity. *Id.* at 308-09. When an officer takes and retains an individual's identification, the officer has stopped the person. *State v. Ayles*, 348 Or 622, 628, 237 P3d 805 (2010); *State v. Thompkin*, 341 Or 368,

378-79, 143 P3d 530 (2006); *State v. Lay*, 242 Or App 38, 44, 252 P3d 850 (2011); *State v. Radtke*, 242 Or App 234, 239-40, 255 P3d 543 (2011). When an officer conducts a warrant check or other investigation that could result in the defendant's immediate citation or arrest, the officer has stopped the person. *Hall*, 339 Or at 19; *State v. Parker*, 242 Or App 387, 394, 255 P3d 624 (2011).

In this case, the officers stopped defendant no later than the point when Gathercoal took defendant's driver's license and performed the warrant check. During the time Gathercoal was in possession of defendant's driver's license, defendant could not leave the scene without forfeiting his license. *Lay*, 242 Or App at 44. During the time Gathercoal was running the warrant check, defendant would not have felt free to leave. *Hall*, 339 Or at 19 ("[W]e find it difficult to posit that a reasonable person would think that he or she was free to leave at a time when that person is the investigatory subject of a pending warrant check."). Thus, a reasonable person in defendant's position would believe that Gathercoal was intentionally and significantly depriving defendant of his liberty. *Ashbaugh*, 349 Or at 316; *Hall*, 339 Or at 19; *Lay*, 242 Or App at 44.

At the time Gathercoal stopped defendant, he lacked reasonable suspicion that defendant had engaged in criminal activity. Gathercoal testified repeatedly at the hearing that, when he arrived in the parking lot and requested defendant's identification, he "had no idea what was going on," other than that Stearns was present with three people. If Gathercoal knew nothing about the situation he was entering other than that three people were present, he could not have had reasonable suspicion justifying a stop of defendant. Because Gathercoal lacked reasonable suspicion, the stop was unlawful.

To successfully suppress evidence obtained following police conduct violating Article I, section 9, a defendant must first establish a "minimal factual nexus," or "but for" causation, between the evidence sought to be suppressed and the prior unlawful police conduct. *Hall*, 339 Or at 25. If the evidence was obtained during the unlawful police conduct, that suffices to establish a minimal factual

nexus. *State v. Rodgers/Kirkeby*, 347 Or 610, 629-30, 227 P3d 695 (2010). The burden then shifts to the state to prove that (1) the police inevitably would have obtained the disputed evidence through lawful procedures even without the violation of the defendant's rights; (2) the police obtained the disputed evidence independently of the violation of the defendant's rights; or (3) the preceding violation has such a tenuous factual link to the disputed evidence that the unlawful police conduct cannot properly be viewed as the source of that evidence. *Hall*, 339 Or at 25.

In this case, defendant has established the required minimal factual nexus between the police's unlawful stop and the disputed evidence. Although the record does not indicate whether Stearns approached defendant during, or just after, Gathercoal's warrant check, the two events certainly occurred very close in time. The state makes no argument regarding inevitable discovery, independent source, or attenuation. Thus, given the temporal proximity between the unlawful police conduct and the acquisition of the disputed evidence, and the absence of any intervening circumstances or other circumstances mitigating the effect of that police conduct, we hold that the disputed evidence was the product of police conduct that violated Article I, section 9, and is therefore inadmissible. *Rodgers/Kirkeby*, 347 Or at 630; *Hall*, 339 Or at 36.

Reversed and remanded.