Argued and submitted December 10, 2014, Central Catholic High School, reversed and remanded January 22, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JARED JOHN HEILMAN,
*Defendant-Appellant.*

Hood River County Circuit Court
120097CT; A154018

342 P3d 1102

Erin Snyder, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Gregory A. Rios, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Tiffany Keast, Assistant Attorney General.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

DUNCAN, P. J.

## DUNCAN, P. J.

In this criminal case, defendant, who was convicted of driving under the influence of intoxicants (DUII), ORS 813.010, raises two assignments of error. In his first, he asserts that the trial court erred in denying his motion to suppress evidence, arguing that he was stopped without probable cause. In his second, he asserts that the trial court erred in admitting scientific evidence for which the state had not laid a sufficient foundation. We agree with defendant that the trial court erred in denying his motion to suppress, and we reverse and remand based on that error. Therefore, we do not reach his second assignment of error.

We begin with the undisputed facts. A police officer on patrol in Hood River saw a car, later determined to be driven by defendant, stopped on 13th Street where it intersects with State Street. There is a crosswalk at the intersection, but no stop light or stop sign. The officer drove toward defendant's car, stopping approximately "one half to one car lengths" behind it. According to the officer, defendant's car remained stationary for approximately 30 seconds. In order to see what was happening in defendant's car, the officer turned his patrol car's spotlight on and directed it at defendant's car. The officer saw a slight movement in defendant's car, as if the light had startled the driver. Then the car moved forward and proceeded down 13th Street and turned left onto Oak Street. The officer followed the car a short distance and then turned on his overhead lights to initiate a traffic stop, and defendant pulled over. Based on observations that he made after pulling defendant over, the officer conducted a DUII investigation, after which he arrested defendant for DUII.

Defendant filed a motion to suppress all evidence obtained as a result of the traffic stop, arguing that the officer did not have probable cause to stop him for a violation or reasonable suspicion to stop him for a crime, and, therefore, the stop violated Article I, section 9, of the Oregon Constitution.[1] At the motion to suppress hearing, the

_____

[1] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no

prosecutor questioned the officer about where he first saw defendant's car:

"Q: [P]lease tell the Court where you were.

"A: At that time I was heading north bound on 13th Street. I came across a vehicle stopped in an intersection of 13th and State. The vehicle was stopped, and I sat behind the vehicle for approximately 30 seconds. At that time there was no other traffic on the road, and no pedestrians crossing the road.

"So I activated my spot light to see if there was anybody in the vehicle as it was dark out. As soon as I activated the spot light the vehicle took off, and took a left on to Oak Street. At that time I activated my overhead patrol lights, and made a vehicle stop on Cascade.

"Q. And what time of the night was this?

"A. This was approximately a little after 9:30 p.m.

"Q. Uh huh, and I'm showing you what's been marked as State's Exhibit #1 which (unintelligible). Can you identify this for the record?

"A. Yes.

"Q. What exactly is it.

"A. So, this is a map of the area of 13th and State and Oak?

"Q. And is it a hand drawn map?

"A. Yes, ma'am.

"Q. And is it accurate of that area?

"A. Yes, ma'am.

"Q. All right, and using this (unintelligible) pen can you indicate for all where the Defendant's vehicle was? Now wait? Was it in this lane or was it in this lane? Is it a two lane road?

"A. This is two lane road.

"Q. Meaning traffic—

---

warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched and the person or things to be seized."

"A.   Oh.

"Q.   —goes north and south.

"A.   Yeah, excuse me, yeah. So, my mistake.

"Q.   All right.

"A.   (unintelligible) of this.

"Q.   So, and you—so is that the intersection of State and 13th?

"A.   Yes, ma'am.

"Q.   And you were behind him?

"A.   I was behind him. Would you like me to draw that on there?

"Q.   No."

The map shows a square with a triangle on it representing defendant's car in the northbound lane of 13th Street to the south of the crosswalk. Another square with a triangle is in the southbound lane and is crossed out. From the transcript and the map, it is apparent that the officer drew defendant's car in the southbound lane first, then corrected himself. A copy of the map is appended to this opinion. 268 Or App at 608.

Later in his direct examination of the officer, the prosecutor asked the officer whether he issued defendant a citation for a traffic violation:

"Q.   *** [D]id you cite him for a traffic violation?

"A.   I did, I cited him for illegal stopping.

"Q.   And what was that based on?

"A.   His position in the intersection for approximately 30 seconds."

The officer did not identify a particular statutory provision that he believed defendant had violated.

During cross-examination, defense counsel asked the officer when he decided to pull defendant over and why he used his spotlight before doing so:

"Q. *** [D]id you form any suspicion concerning the driver, or the occupants of that vehicle?

"A. Due to the time of night, and the prolonged stopping I had suspicions that it was a possible DUI.

"Q. At what point in time did you make the decision that you were going to pull this car over?

"A. As soon as I turned on the spot light.

"Q. Why did you turn on the spot light rather than your overhead lights?

"A. I didn't turn on my overhead lights because we were in an intersection, and I felt that it was an unsafe place to stop, or to perform a traffic stop."

To summarize, the officer first testified that he "came across a vehicle stopped *in an intersection* of 13th and State." (Emphasis added.) Then, when asked to "indicate for all" where defendant's car was, the officer drew a square representing defendant's car positioned south of the crosswalk that borders the intersection, that is, he drew the car *outside the intersection*. Later, the officer testified that he cited defendant for a traffic violation based on defendant's "position *in the intersection* for approximately 30 seconds." (Emphasis added.) And, finally, when asked why he turned on his spotlight instead of his overhead lights, the officer—who was stopped approximately one half to one car length behind defendant—explained that he did so because "*we were in an intersection*[.]" (Emphasis added.)

During argument on defendant's motion to suppress the results of the stop, the prosecutor argued that the officer had probable cause to stop defendant for violating ORS 811.550(5) by stopping "within an intersection."[2]

---

[2] ORS 811.550 provides, in pertinent part:

"This section establishes places where stopping, standing and parking a vehicle are prohibited for purposes of the penalties under ORS 811.555. Except as provided under an exemption in ORS 811.560, a person is in violation of ORS 811.555 if a person parks, stops or leaves standing a vehicle in any of the following places:

"*****

"(5) Within an intersection. Exemptions under ORS 811.560 (4) to (7) are applicable to this subsection."

Defense counsel responded that the state had failed to prove that the officer had probable cause to stop defendant for violating ORS 811.550(5), because the state's map established that defendant did not stop within an "intersection," as that term is defined by ORS 801.320, which provides, in pertinent part:

> "'Intersection' means the area of a roadway created when two or more roadways join together at any angle, as described in one of the following:
>
> "(1)   If the roadways have curbs, the intersection is the area embraced within the prolongation or connection of the lateral curb lines.
>
> "(2)   If the roadways do not have curbs, the intersection is the area embraced within the prolongation or connection of the lateral boundary lines of the roadways."

Specifically, defense counsel argued, "[W]e would submit that the prolongation of the intersection was not yet reached prior to where the vehicle was stopped. The position of the vehicle on the [map] is prior to that where the curb would extend out laterally to create the intersection." Defense counsel further argued that the state had failed to establish that the officer had probable cause to believe that defendant had violated any of the other paragraphs of ORS 811.550.

In rebuttal, the state made a new argument. Specifically, it argued that the officer had probable cause to stop defendant for violating ORS 811.550(1), which prohibits stopping "[u]pon a roadway outside a business district or residence district, whether attended or unattended, when it is practicable to stop, park or leave the vehicle standing off the roadway."[3] Defense counsel responded that the state

---

[3] ORS 801.170 defines "[b]usiness district" as "the territory contiguous to a highway when 50 percent or more of the frontage thereon for a distance of 600 feet or more on one side, or 300 feet or more on both sides, is occupied by buildings used for business." ORS 801.430 defines "[r]esidence district" to mean:

"[T]erritory not comprising a business district that is contiguous to a highway that:

"(1) Has access to property occupied primarily by multifamily dwellings; or

had not presented any evidence that defendant had stopped outside of a business or residential district.

The trial court ruled that the officer had probable cause to stop defendant for violating both ORS 811.550(1) and (5). Regarding ORS 811.550(1), the trial court observed that defense counsel's contention that the section applies only to stops outside of business and residential districts might be correct, but that "this is one of those cases where if the officer is wrong as to the violation, but it's a good faith belief, I think it still applies[.]"

After the trial court denied defendant's motion, the case proceeded to trial, and a jury found defendant guilty of DUII. Defendant then brought this appeal.

On appeal, defendant renews his argument that the officer lacked probable cause to stop him for a traffic violation. Or Const, Art I, § 9 (seizures must be reasonable); *State v. Stookey*, 255 Or App 489, 491, 297 P3d 548 (2013) (citing *State v. Miller*, 345 Or 176, 186, 191 P3d 651 (2008)) (a traffic stop is a seizure and, to carry its burden of proving that a traffic stop was reasonable, the state must prove (1) that the officer conducting the stop subjectively believed that a traffic violation occurred and (2) that the officer's belief was objectively reasonable). Defendant contends that the officer did not have probable cause to stop him for violating ORS 811.550(5), because that statute applies to drivers who stop their cars within an intersection and he did not stop his car "within an intersection"; when the officer saw his car stopped for 30 seconds, his car was not "within an intersection" because, as indicated on the state's map, the car was south of the crosswalk that borders the intersection. Defendant also contends that the officer did not have probable cause to stop him for violating ORS 811.550(1), which prohibits stopping "[u]pon a roadway outside a business district or residence district, whether attended or unattended, when

---

"(2) Has an average of 150 feet or less between accesses or approaches to:

"(a) Dwellings, churches, public parks within cities or other residential service facilities; or

"(b) Dwellings and buildings used for business."

The trial court observed that the area where defendant was stopped appeared to be "principally a residential district."

it is practicable to stop, park or leave the vehicle standing off the roadway[,]" because the state "failed to establish that he stopped outside a business or residential district" and "that it was practicable for [him] to stop off the roadway."

In response, the state contends only that the officer had probable cause to stop defendant for violating ORS 811.550(5) for stopping "within an intersection"; it does not contend that the officer had probable cause to stop defendant for violating ORS 811.550(1) for stopping upon a roadway outside of a business or residential district when it was practicable for him to stop off the roadway. The state acknowledges that, if defendant stopped before the crosswalk bordering the intersection, as a matter of law, he would not have been within the intersection for the purposes of ORS 811.550(5).[4] But, the state contends that (1) the trial court made an implicit factual finding that defendant was stopped within the intersection; (2) there is evidence in the record to support that implicit finding and, therefore, we are bound by the finding; and (3) the finding is sufficient to support a legal conclusion that the officer had probable cause to stop defendant for violating ORS 811.550(5).

The state invokes *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968), for the proposition that an appellate court is bound by a trial court's findings of historical fact and, if a trial court does not make express findings of fact, and there is evidence from which the facts could be decided in more than one way, the appellate court is to presume that the trial court resolved the factual dispute in a manner consistent with its ultimate legal conclusion. Applying that rule, the state argues that there is evidence in the record in this case from which "the fact of the location where defendant's vehicle was standing could be decided more than one way[,]" and, therefore, we must presume that the trial court decided that it was standing within the intersection because that finding is consistent with the court's ultimate legal conclusion that the officer had probable cause to stop defendant for violating ORS 811.550(5).

---

[4] At oral argument, the state agreed that, if defendant's car was in the location indicated on the state's map, the officer would not have had probable cause to stop defendant for violating ORS 811.550(5).

According to the state, the evidence from which the location of defendant's car could be decided in more than one way is the testimony of its own witness. The state contends that, because the officer "twice testified that defendant's vehicle was standing 'in' the intersection[,]" the trial court could find that it was within the legal bounds of the intersection, even though, when asked to "indicate for all where the Defendant's vehicle was[,]" the officer, by the state's own description, "indicated that defendant's vehicle was standing *before* the intersection." Essentially, the state argues that the trial court could choose to disregard the officer's drawing, which shows defendant's car outside the intersection, and accept only the officer's oral statements that defendant's car was inside the intersection.

With the arguments thus framed, we turn to the applicable law. We are bound by a trial court's findings of historical fact "if there is constitutionally sufficient evidence in the record to support those findings." *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). "If findings of historical fact are not made on all pertinent issues and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion." *Id.* If a finding is based on an inference, it must be a reasonable inference. *State v. Juarez-Godinez*, 326 Or 1, 7, 942 P2d 772 (1997).

On this record, we are skeptical that the trial court made the implicit finding on which the state pins its case. Nevertheless, if it did, we are not bound by that finding because it is not supported by the record.[5] In order to make

[5] Indeed, the record affirmatively suggests that the trial court did not make the finding that the state attributes to it, but instead, decided the case under a different rationale. As mentioned, in response to defense counsel's argument that the state had failed to prove that the officer had probable cause to stop defendant for violating ORS 811.550(1) because it had not presented any evidence that defendant had stopped outside of a business or residential district, the court remarked that defense counsel's legal argument might be correct, but that this was "one of those cases where if the officer is wrong as to the violation, but it's a good faith belief, I think it still applies[.]" The court's remark indicates that it might have thought that, if the officer had a mistaken but good faith belief about the law, the officer could stop defendant. Thus, it is possible that the court might have thought that the officer could stop defendant for illegal stopping if the officer had a good faith, but mistaken, belief about what constitutes illegal stopping. If so, the court would have been incorrect. *State v. Baker/Jay*, 232 Or App 112, 132,

such a finding, the trial court would have had to draw an unreasonable inference from the officer's testimony; it would have had to infer that defendant's car was somewhere other than where the officer drew it on the map.

The state suggests that such an inference could be drawn from the officer's statements that defendant was "in" the intersection. We respectfully disagree. As described above, when asked where he was on patrol, the officer answered that he was "heading north bound on 13th Street" and he "came across a vehicle stopped in an intersection of 13th and State." After asking the officer what time of day he saw defendant, the prosecutor handed the officer the map and asked the officer "to indicate for all where the Defendant's vehicle was[,]" and the officer drew the car on the map. The only reasonable reading of the record is that, through the map, the officer clarified what he meant when he said that defendant's car was "in" the intersection; he literally illustrated what he meant. The drawing was intended to be, and is, a more specific description of the location of defendant's car. Given that, a trier of fact could not reasonably isolate the officer's oral description of where defendant's car was from his illustration and conclude that the car was within the intersection.[6]

Because, as he indicated on the map, the officer saw defendant's car stopped before the crosswalk, the facts, as

221 P3d 749 (2009), *rev den*, 348 Or 280 (2010) ("[I]f the facts that the officer believed she observed, if true, would have constituted a traffic violation, then the officer's belief that a traffic violation occurred was objectively reasonable. In contrast, if the facts that the officer believed she observed, if true, would not constitute a traffic violation, the officer's belief that a traffic violation occurred was not objectively reasonable."). *But see Heien v. North Carolina*, ___ US ___, 135 S Ct 530, 190 L Ed 2d 475 (2014) (under the Fourth Amendment, reasonable suspicions, as required for a traffic stop, can rest on a reasonable mistake of law). But, even assuming, as the state argues, that the trial court made an implicit finding that defendant's car was stopped within the intersection, the trial court erred because, as explained in the body of the opinion, the record does not support such a finding.

[6] Further supporting the conclusion that the officer used the phrase "in an intersection" to refer to an area broader than the legal bounds of an intersection, is that, when asked why he did not initiate a traffic stop when he first suspected defendant of driving under the influence of intoxicants based on the time of night and the 30-second stop, the officer said that he waited because "we were in an intersection" even though he was stopped at least one half of a car length behind defendant.

the officer perceived them, did not constitute a violation of ORS 811.550(5). Therefore, the officer lacked probable cause to stop defendant. Because the officer lacked probable cause to stop defendant, the stop violated defendant's Article I, section 9, rights, and the evidence resulting from it should have been suppressed. *See State v. Musser*, 356 Or 148, 158-59, 335 P3d 814 (2014) (trial court erred in failing to suppress evidence obtained as a result of observations made possible only because of an officer's violation of the defendant's Article I, section 9, rights); *State v. Smith*, 252 Or App 518, 523-24, 287 P3d 1210 (2012) (trial court erred in failing to suppress evidence of DUII obtained following an unlawful stop).

Reversed and remanded.